**No. _____**

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MGA ENTERTAINMENT INC., a California corporation,

*Plaintiff-Petitioner,*

v.

CLIFFORD "T.I." HARRIS, an individual; TAMEKA "TINY" HARRIS, an individual; OMG GIRLZ LLC, a Delaware Limited Liability Company; and DOES 1-10, inclusive,

*Defendants-Respondents,*

---

GRAND HUSTLE, LLC, PRETTY HUSTLE, LLC, and OMG GIRLZ LLC

*Counter-Claimants-Respondents,*

v.

MGA ENTERTAINMENT INC., ISAAC LARIAN, and DOES 1-10, inclusive,

*Counter-Defendants-Petitioners,*

---

On Appeal from the United States District Court
for the Central District of California
No. 2:20-cv-11548, Hon. Judge James V. Selna

---

## PETITION FOR PERMISSION TO APPEAL PURSUANT TO
## 28 U.S.C. § 1292(b)

---

MARK A. FINKELSTEIN
ELLEN S. KIM
UMBERG ZIPSER LLP
 *1920 Main Street, Suite 750*
 *Irvine, CA 92614*
 *(949) 679-0052*
 *mfinkelstein@uzllp.com*
 *ekim@uzllp.com*

LISA S. BLATT
AMY M. SAHARIA
KIMBERLY BROECKER
WILLIAMS & CONNOLLY LLP
 *680 Maine Avenue SW*
 *Washington, DC 20024*
 *(202) 434-5000*
 *lblatt@wc.com*
 *asaharia@wc.com*
 *kbroecker@wc.com*

## CORPORATE DISCLOSURE STATEMENT

Plaintiff-Counterclaim Defendant-Petitioner MGA Entertainment Inc. has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

i

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

STATEMENT OF FACTS .....................................................................................4

LEGAL STANDARD ...........................................................................................10

ARGUMENT ........................................................................................................12

I.     The Question Whether Punitive Damages in a Disgorgement Action Are Legal or Equitable Satisfies the Section 1292(b) Criteria.......................................................................................................12

     A.     Whether a Judge or Jury Must Determine Punitive Damages Is a Controlling Question of Law ...................................13

     B.     There Is a Substantial Ground for a Difference of Opinion over Whether Punitive Damages Based on Disgorgement Are Equitable ..........................................................................................14

     C.     Interlocutory Review Will Materially Advance the Ultimate Termination of the Litigation..........................................18

II.     The Question Whether Punitive Damages Are Available Absent Actual Damages Also Warrants This Court's Review...........................20

CONCLUSION.....................................................................................................25

ii

# TABLE OF AUTHORITIES

Page

## CASES

*Byrd v. Loc. 24, I.B.E.W*, 1977 WL 15446 (D. Md. June 13, 1977)....................18

*California v. Altus Fin. S.A.*, 540 F.3d 992 (9th Cir. 2008) ..............3, 22, 24, 25

*Channell v. Anthony*, 58 Cal. App. 3d 290 (Ct. App. 1976)................................23

*Clark v. McClurg*, 215 Cal. 279 (1932) ...............................................................22

*Contractor's Safety Ass'n v. Cal. Comp. Ins. Co.*, 48 Cal. 2d 71 (1957)...........22

*Couch v. Telescope Inc.*, 611 F.3d 629 (9th Cir. 2010) .....................................11

*Duncan v. Louisiana*, 391 U.S. 145 (1968) ........................................................14

*Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*,
    946 F.3d 1367 (Fed. Cir. 2020) ....................................................................17

*Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*,
    28 F.4th 35 (9th Cir. 2022) ..........................................................................20

*Hoescht Marion Roussel, Inc. v. Par Pharm., Inc.*,
    95 F.3d 1165 (Fed. Cir. 1996) ......................................................................13

*Horn v. Guaranty Chevrolet Motors*, 270 Cal. App. 2d 477 (1969)...................23

*ICTSI Or., Inc. v. Int'l Longshore & Warehouse Union*,
    22 F.4th 1125 (9th Cir. 2022) ..........................................................11, 18, 19

*In re Baker & Getty Fin. Servs., Inc.*, 954 F.2d 1169 (6th Cir. 1992).............13

*In re Cinematronics, Inc.*, 916 F.2d 1444 (1990) .......................................10, 21

*In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*,
    966 F. Supp. 2d 1031 (C.D. Cal. 2013) ........................................................12

*In re Tsay JBR LLC*, 136 F.4th 1176 (9th Cir. 2025).........................8, 9, 10, 16

*Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140 (2023)...................6

*Kizer v. County of San Mateo*, 53 Cal. 3d 139 (1991),
    *overruled on other grounds*, 14 Cal. 5th 758 (2023)...............................21, 22

*Kuehner v. Dickinson & Co.*, 84 F.3d 316 (9th Cir. 1996)................................11

*Liu v. SEC*, 591 U.S. 71 (2020) .................................................................12, 15, 17

*Millar v. James*, 254 Cal. App. 2d 530 (1967).................................................23

*Mother Cobb's Chicken Turnovers v. Fox*, 10 Cal. 2d 203 (1937)................21, 22

*Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965 (1993).....................22, 23

*Proofpoint, Inc. v. Vade USA, Inc.*,
    2024 WL 4003096 (9th Cir. Aug. 30, 2024) ..........................................*passim*

*Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681 (9th Cir. 2011).......11, 14

*Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989)..................................................6

*Rostker v. Goldberg*, 453 U.S. 57 (1981) ...........................................................17

iii

Page

Cases—continued:

*SEC v. Jarkesy*, 603 U.S. 109 (2024)..................................................16, 17
*SEC v. Rind*, 991 F.2d 1486 (9th Cir. 1993)........................................13
*Standard Oil Co. of Cal. v. Arizona*, 738 F.2d 1021 (9th Cir. 1984)...........13, 20
*Swofford v. B&W, Inc.*, 336 F.2d 406 (5th Cir. 1964).........................17
*Tull v. United States*, 481 U.S. 412 (1987) .....................................16
*Ward v. Taggart*, 51 Cal. 2d 736 (1959) ........................................23
*Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*,
    1979 WL 1689 (E.D. Pa. Aug. 21, 1979).......................................14

## STATUTES AND RULES

Lanham Act, Pub. L. No. 79-489, 60 Stat. 427 (1946).......................5, 7
18 U.S.C. § 1836 .........................................................................17
28 U.S.C. § 1292 .........................................................................1, 11
Cal. Civ. Code § 3343 ..................................................................23
Fed. R. Civ. P.
    39...................................................................................................7
    59...................................................................................................8

## OTHER AUTHORITIES

Wright & Miller's Federal Practice & Procedure (3d ed. 2025) ................12, 13
Moore's Federal Practice  (3d ed. 2025)............................................13

iv

## INTRODUCTION

This petition for interlocutory review under 28 U.S.C. § 1292(b) arises from a five-year-old dispute between petitioner-counterclaim defendant MGA Entertainment Inc., a world-leading toy company, and counterclaimants Clifford "T.I." Harris (a rapper) and his wife Tameka "Tiny" Harris. MGA developed and sells a popular line of dolls called the L.O.L. Surprise! O.M.G. dolls, which have oversized eyes, funky clothing, unique accessories, and (like many dolls) brightly colored hair:



In 2020, the Harrises claimed that the dolls infringed the trade dress, and misappropriated the name, image, and likeness, of a then-defunct teenage girl band called OMG Girlz created by Ms. Harris. After MGA filed a declaratory judgment action, the Harrises counterclaimed. The Harrises eventually claimed that the OMG Girlz possessed protectible trade dress composed of the name "OMG GIRLZ," coupled with combinations of vibrant pink, purple, and blue hair, and experimental, fun, urban, and edgy wardrobes

1

and makeup, and that California common law protected their image and likeness. In the ensuing five years of litigation, the Harrises failed to prove *any* actual damages.

The parties have tried the Harrises' claims three times to a jury. The first trial ended in a mistrial. The second produced a swift verdict in MGA's favor (including a jury inquiry as to whether it could award attorneys' fees to MGA), *see* Dkt. 765-777, which the district court later vacated due to supposed instructional error. The third produced a windfall verdict for the Harrises. Finding that MGA infringed the OMG Girlz' trade dress and misappropriated their likeness, the third jury disgorged $17,872,253 in MGA's profits and awarded $53,616,759 in punitive damages. But, as the district court later recognized, the clear weight of the evidence rebutted a finding that MGA engaged in conduct that would justify an award of punitive damages. The district court thus granted a new trial on punitive damages.

The parties and district court now stand on the precipice of a fourth trial on punitive damages. But the parties disagree as to whether the trial should be a jury or bench trial. Because the claimed punitive damages are based on an award of equitable disgorgement, MGA argued that the court should decide punitive damages. The Harrises, on the other hand, argued that since punitive

2

damages are meant to deter, the issue is for a jury. The district court recognized that this Court has already rejected a jury right in these circumstances. *See Proofpoint, Inc. v. Vade USA, Inc.*, 2024 WL 4003096 (9th Cir. Aug. 30, 2024). But the district court reasoned that this Court's "unpublished" opinion did not bind it and held that a jury should decide punitive damages. A36-37, A45. Recognizing that "all three statutory requirements are met," however, the district court certified that question for immediate appeal. A46.

And there is a threshold issue too: As this Court has recognized, under California law, without compensatory damages, there can be no punitive damages. *California v. Altus Fin. S.A.*, 540 F.3d 992, 1001 (9th Cir. 2008). For that reason, there should be no trial on punitive damages at all. The district court explained that this Court may analyze that threshold claim as well because it is "inextricably tied" to the question about the trial's structure. A50 n.3. To save the parties the needless expense of a fourth jury trial, this Court should grant interlocutory appeal to decide:

1. In an action for disgorgement of profits, are punitive damages an equitable remedy to be determined by a judge or a legal remedy to be determined by a jury?

2. Are punitive damages available for a California common law misappropriation claim in the absence of actual damages?

## STATEMENT OF FACTS

1. MGA is a leading developer of children's toys. Dkt. 326 at 2. In 2016, MGA launched a series of dolls called L.O.L. Surprise! "L.O.L." stands for "Lil' Outrageous Littles," and they are a "Surprise!" because the dolls—called "Tots"—are sold in mystery capsules, meaning that the purchaser does not know which specific tot they are buying. *Id.* at 3. The collection was an overwhelming success and became the number one selling toy in the United States from 2017 to 2019. *Id.* In 2019, MGA released a spin-off line called L.O.L. Surprise! O.M.G. Outrageous Millennial Girls. Dkt. 1133 at 2. Each doll in that line is the big sibling of a tot. Dkt. 326 at 3.

Earlier, in 2009, Tameka "Tiny" Harris, herself a singer-songwriter, developed a musical group called OMG Girlz, made up of Zonnique Pullins (Ms. Harris's daughter), Bahja Rodriguez, and Breaunna Womack. Dkt. 1133 at 2. The OMG Girlz released singles, toured, and had social media followers. Dkt. 326 at 1-2. The group announced their breakup in March 2015. *Id.* MGA and the Harrises are not competitors, and the Harrises do not sell any dolls. Dkt. 1026 at 50:1-23.

4

2. In December 2020, the Harrises sent MGA a cease-and-desist letter claiming that MGA had "copied the OMG Girlz' signature look" and demanding that MGA stop distributing the dolls. Dkt. 1113 at 2. In response, MGA filed a declaratory action to clarify that it had not acted unlawfully. *Id.* The Harrises filed counterclaims alleging violations of the Lanham Act, state statutory and common law misappropriation, and unfair competition. *Id.* In July 2022, the district court (Selna, J.) granted summary judgment in favor of MGA on several claims. *Id.* The remaining claims—the Harrises' claims for trade dress infringement under the Lanham Act and common law misappropriation of likeness and MGA's parallel claim for declaratory relief— went to trial. Dkt. 1090 at 2-3. What started as one trial became three. From the beginning, because the Harrises never provided a computation of lost profits or any other form of actual damages, the district court excluded any damages theory based on "loss opportunities and direct lost profits calculation or the Harris Parties's damages." Dkt. 502 at 7-8.

3. The first trial ended in a mistrial when the Harrises played prohibited deposition testimony in direct violation of a district court order. Dkt. 565 at 8-12; Dkt. 569; Dkt. 1113 at 3 n.1.

5

The second jury trial began in May 2023. Dkt. 860 at 2. MGA asserted a First Amendment defense to the Harrises' trade dress and misappropriation claims, arguing that the dolls are transformative and expressive works. Dkt. 860 at 7-8. On the trade dress claim, the district court instructed the jury as to the test under *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989), which courts use to determine whether an expressive work should receive First Amendment protection. Dkt. 860 at 3-4; Dkt. 764 at 23. The jury returned a verdict in favor of MGA on all claims. Dkt. 1113 at 3.

The district court later granted the Harrises' motion for new trial and vacated the verdict after the Supreme Court's decision in *Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140 (2023). Dkt. 860 at 5-6. The court concluded that under that decision, "the *Rogers* test instruction should not have been given" because the court believed that MGA used the at-issue trade dress for source identification. *Id.* And even though the *Rogers* instruction pertained only to the trade dress claim, the court granted a new trial on misappropriation too, reasoning that the evidence for both claims "overlapped." *Id.* at 8-9.

In September 2024, the parties headed to trial for the third time. At the third trial, the jury found that seven of MGA's dolls infringed the OMG Girlz'

6

trade dress, and misappropriated the band's name, likeness, or identity in violation of California common law. Dkt. 1133 at 3-4. On MGA's claim for declaratory relief, the jury found that eight additional dolls either infringed the OMG Girlz' trade dress or misappropriated their name, likeness, or identity (or both), but that thirteen other dolls did not. *Id.* at 4. The jury recommended $17.8 million in disgorged profits and $53.6 million in punitive damages. *Id.* at 4.

The court adopted the jury's disgorgement award for common law misappropriation but awarded no disgorgement under the Lanham Act. Analyzing Lanham Act disgorgement, the court explained that one factor weighing against disgorgement was that no "financial harm" to the Harrises was "present." Dkt. 1090 at 9. The court found that the jury's punitive damages award (even if equitable) was binding under Federal Rule of Civil Procedure 39(c). Dkt. 1118 at 3. On April 29, 2025, the court entered final judgment. *Id.* at 4.

In post-trial briefing, MGA argued that California law did not permit punitive damages because there were no actual damages. Dkt. 1046 at 24-25; Dkt. 1121-1 at 11-12; Dkt. 1125 at 12-14. The district court concluded that punitive damages were available on the ground that an award of restitution

7

permits recovery of punitive damages. A14 ("Available Remedies Order"). Nevertheless, the court granted MGA's motion for a new trial and vacated the punitive damages award under Rule 59 because "the clear weight of evidence [did] not support a clear and convincing finding of willfulness, intent, or conscious disregard of the OMG Girlz' trade dress" and "an entry of judgment on the original" punitive damages award "would constitute a reversible error." A13. The court offered the Harrises a remittitur in the amount of $1, "the maximum punitive damages award sustainable by the proof." A13.

The Harrises rejected remittitur and elected a new trial on punitive damages. The parties then briefed the structure of the punitive damages trial. Dkt. 1137. MGA argued that the court should decide punitive damages, citing this Court's decision in *Proofpoint, Inc. v. Vade USA, Inc.*, 2024 WL 4003096 (9th Cir. Aug. 30, 2024), which held that where an award of "exemplary damages" "rests on disgorgement of a defendant's profits, it is an equitable remedy." Dkt. 1139 at 7-9; 2024 WL 4003096, at *1. MGA argued that just as in *Proofpoint*, punitive damages here depend entirely on disgorgement, which is equitable, so the punitive damages are equitable too.

The Harrises' response largely relied on *In re Tsay JBR LLC*, 136 F.4th 1176 (9th Cir. 2025). Dkt. 1140 at 4-5. There, the plaintiff argued she was

8

entitled to a jury trial on statutory damages under a state anti-discrimination statute; she did not seek disgorgement. *Tsay*, 136 F.4th at 1178. This Court applied the longstanding two-step framework, analyzing first the historical analog for the claim, and second the nature of the remedy, concluding that the Seventh Amendment required a jury trial. *Id.* at 1179-81. The Harrises argued that, under that logic, "the Seventh Amendment applies to punitive damages determinations generally." Dkt. 1140 at 5.

The court sided with the Harrises and concluded that the availability and amount of punitive damages (if any) must be decided by a jury. A36-37 ("New Trial Order"). On September 23, 2025, the court ordered a fourth trial, for a jury to decide whether MGA acted willfully and, if so, whether and how much punitive damages should be awarded. A39-40.

MGA then moved to certify the court's New Trial Order, A34-40, and Available Remedies Order, A1-33, for interlocutory appeal. MGA sought review of two interrelated legal questions presented by those orders: (1) In an action for disgorgement of profits, are punitive damages an equitable remedy to be determined by a judge; and (2) are punitive damages available for a California common law misappropriation claim in the absence of actual

damages? Dkt. 1150-1. The district court granted interlocutory appeal of the New Trial Order, finding that the statutory requirements were met. A46, A50.

According to the court, whether the trial will be a bench or a jury trial is a controlling question of law, and an appeal now will advance the ultimate termination of the litigation. The court explained that it could not "justify the time, effort, and expense of a jury trial if it is not necessary." A46. As to substantial grounds for difference of opinion, the court concluded "that reasonable judges may differ over whether *In re Tsay* overwrote *Proofpoint*" because "*Proofpoint* specifically addressed remedies tethered to disgorgement, while *In re Tsay* did not." A45. The court denied interlocutory appeal of the Available Remedies Order but noted that under Ninth Circuit precedent, this Court may analyze the Available Remedies Order because it is inextricably tied to the New Trial Order. A50 n.3 (citing *In re Cinematronics, Inc.*, 916 F.2d 1444, 1449 (1990)).

## LEGAL STANDARD

The Ninth Circuit may review an order on interlocutory appeal when it (1) "involves a controlling question of law," (2) "as to which there is substantial ground for difference of opinion," and (3) "immediate appeal from the order

10

may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

A question of law is "controlling" when appellate resolution of the issue will "materially affect the outcome of litigation in the district court." *ICTSI Or., Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1131 (9th Cir. 2022) (citation omitted). Issues are controlling, for instance, when their resolution could avoid "needless expense and delay." *Kuehner v. Dickinson & Co.*, 84 F.3d 316, 319 (9th Cir. 1996).

"A substantial ground for difference of opinion exists where reasonable jurists might disagree on an issue's resolution." *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011). It is "[s]ignificant[]" if any case "conflicts with the district court's" decision. *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010). Even on a "novel" question of law, though, it is enough if "fair-minded jurists might reach contradictory conclusions." *Reese*, 643 F.3d at 688.

"[T]he materially advance prong is satisfied when the resolution of the question may appreciably shorten the time, effort, or expense of conducting the district court proceedings." *ICTSI Or.*, 22 F.4th at 1131 (cleaned up). In practice, this prong rises or falls with the first, as obtaining "a final decision

11

on a controlling legal issue sooner, rather than later" may "facilitate[] disposition of the action." *In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 966 F. Supp. 2d 1031, 1045 (C.D. Cal. 2013) (citation omitted); *accord* 16 Wright & Miller's Federal Practice & Procedure § 3930 (3d ed. 2025) (same).

## ARGUMENT

In ordering a fourth jury trial on punitive damages, the district court addressed two threshold, interrelated legal questions: *First*, must punitive damages in an action seeking only disgorgement of profits be tried by a jury and not a court? *Second*, are punitive damages available at all without actual damages? Reasonable jurists could answer those questions differently than the district court, not least because reasonable jurists already have done so. What is more, reviewing those questions now on interlocutory appeal could spare the parties and the district court from a fourth jury trial in five years. This Court should resolve both issues before this litigation proceeds any further.

## I. The Question Whether Punitive Damages in a Disgorgement Action Are Legal or Equitable Satisfies the Section 1292(b) Criteria

Disgorgement of profits is bedrock equitable relief. *Liu v. SEC*, 591 U.S. 71, 80 (2020). But in its New Trial Order, the district court held that punitive damages—even when based on disgorgement of profits—are legal relief to be

12

decided by a jury. A36-37. As the district court acknowledged, that order broke from a decision of this Court. A45. And unless this Court intervenes, that order will force the parties into a needless fourth jury trial. The Court should review the district court's order now.

## A. Whether a Judge or Jury Must Determine Punitive Damages Is a Controlling Question of Law

This Court has held that whether the Seventh Amendment "entitle[s] [a party] to a jury trial" presents "purely a question of law." *Standard Oil Co. of Cal. v. Arizona*, 738 F.2d 1021, 1022-23 (9th Cir. 1984).

That question is also controlling. This Court has twice accepted interlocutory appeals posing the same question. *Id.*; *SEC v. Rind*, 991 F.2d 1486, 1488 (9th Cir. 1993). Other courts too have expressly held that a dispute over whether a jury trial is required "presents a controlling question." *Hoescht Marion Roussel, Inc. v. Par Pharm., Inc.*, 95 F.3d 1165 (Fed. Cir. 1996) (table); *accord In re Baker & Getty Fin. Servs., Inc.*, 954 F.2d 1169, 1172 (6th Cir. 1992). And treatises teach that controlling questions suitable for interlocutory review include questions about "the mode of trial." 16 Wright & Miller's Federal Practice & Procedure § 3931 & n.59 (3d ed. 2025) (collecting cases); *accord* 19 Moore's Federal Practice § 203.31 n.19 (3d ed. 2025) (same).

That consensus makes sense. An underlying premise of the Seventh Amendment is that holding a jury trial could affect outcomes—a jury trial transfers authority from a judge to laypeople, "necessitat[ing] different litigation strategies," *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 1979 WL 1689, at *2 (E.D. Pa. Aug. 21, 1979), and sometimes producing "differ[ent]" results, *Duncan v. Louisiana*, 391 U.S. 145, 157 (1968). Those differences are on full display here, where a judge and jury have *already* disagreed about punitive damages. After the third jury imposed a $53 million punitive damages award, the district court concluded that "the clear weight of evidence" could not support any punitive damages award. A13. Whether a judge or jury must decide punitive damages is therefore controlling.

**B.** **There Is a Substantial Ground for a Difference of Opinion over Whether Punitive Damages Based on Disgorgement Are Equitable**

"A substantial ground for difference of opinion" exists here because "reasonable jurists might disagree." *Reese*, 643 F.3d at 688. Indeed, reasonable jurists already *have* disagreed with the district court's resolution.

That list starts with this Court. The district court conceded that its order diverged from *Proofpoint*, 2024 WL 4003096, which adopted the rule MGA proposes. A45. Just as here, the jury there awarded no actual damages,

14

only "disgorgement of the defendant's profits." *Proofpoint*, 2024 WL 4003096 at *1. And again, as here, the plaintiffs then sought a form of punitive damages (specifically "exemplary damages" under the Defend Trade Secrets Act). *Id.* But this Court held those damages were equitable. *Id.* In so ruling, this Court relied on *Liu*, 591 U.S. 71, which held that "a remedy tethered to a wrongdoer's net unlawful profits, whatever the name, [is] a mainstay of equity courts." *Proofpoint*, 2024 WL 4003096, at *1 (quoting *Liu*, 591 U.S. at 80). That reasoning applies equally here: The punitive damages are "tethered to" disgorgement of profits, rendering them equitable relief. For that reason, the punitive damages must be determined by a court. *Id.*

Even the district court here previously adopted that position. In a tentative ruling, the court concluded that *Proofpoint* is correct, and punitive damages are equitable when "tethered to a wrongdoer's net unlawful profits." Dkt. 1096-4 at 21 (quoting *Proofpoint*, 2024 WL 4003096, at *1).

To be sure, the district court later disagreed with that tentative ruling, but its change of heart only underscores that there is room for difference of opinion. Even after reversing itself, the court acknowledged its "uncertainty," cautioning that "reasonable judges may differ over whether" to adhere to *Proofpoint*. A45-46. The court deviated from this Court's decision because it

15

thought it "not obvious whether" *In re Tsay*, 136 F.4th 1176, "overwrote *Proofpoint*." *Id.*

But *Tsay* announced no new law, and nothing in *Tsay* would have surprised the *Proofpoint* Court. In *Tsay*, the plaintiff sought statutory damages, not disgorgement. 136 F.4th at 1178. To determine whether the damages were equitable, *Tsay* applied the "two-step inquiry" from *SEC v. Jarkesy*, 603 U.S. 109 (2024), and *Tull v. United States*, 481 U.S. 412, 421 & n.6 (1987). 136 F.4th at 1179. Under those cases, courts must consider whether (1) the cause of action and (2) the remedy are equitable or legal "in nature." *Jarkesy*, 603 U.S. at 122-23; *accord Tull*, 481 U.S. at 421 & n.6. For the remedy in particular, courts should ask whether "it is designed to punish or deter." *Jarkesy*, 603 U.S. at 122-23. *Tsay* recited these points, determined that the statutory damages were designed to punish or deter, and found the statutory damages to be legal. 136 F.4th at 1179-81. *Tsay* did not address disgorgement or remedies tethered to disgorgement. *Id.*

*Tsay*'s analysis did not deviate from *Proofpoint* or announce any new rule. Indeed, both *Tsay* and *Proofpoint* expressly relied on *Jarkesy*. 2024 WL 4003096, at *1. And this Court in *Proofpoint* explained that just as disgorgement "is an equitable remedy" at *Jarkesy*'s second step, exemplary

16

damages that "enhance an award" of disgorgement necessarily are too. *Id.* After all, the entire basis for the claim—disgorgement of profits—is "a mainstay of equity courts." *Id.* (quoting *Liu*, 591 U.S. at 80).

Instead of recognizing that *Proofpoint* governs here, the New Trial Order announced a rule that would invalidate centuries of tradition: *any* punitive enhancement of another award is legal relief, triggering a right to a jury. A36-37. But judges have long imposed all manner of punitive enhancements themselves. Under the Patent Act, for instance, "punishment by enhancement is for the court and not the jury." *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1378 (Fed. Cir. 2020); *see also Swofford v. B&W, Inc.*, 336 F.2d 406, 412 (5th Cir. 1964) (upholding that scheme under the Seventh Amendment). And the same is true under other statutes as well, including the Defend Trade Secrets Act at issue in *Proofpoint*. 2024 WL 4003096, at *1 (citing 18 U.S.C. § 1836(b)(3)).

This long tradition is strong proof of what the Constitution permits, and brushing aside acts of Congress is "the gravest and most delicate" step a federal court may take. *Rostker v. Goldberg*, 453 U.S. 57, 64 (1981) (citation omitted). Because the district court's ruling calls this long history into doubt,

17

and wrongly disregards *Proofpoint*, reasonable jurists could disagree with the order, and this Court should decide the question.

### C. Interlocutory Review Will Materially Advance the Ultimate Termination of the Litigation

Finally, interlocutory review of whether a jury trial is required "may appreciably shorten the time, effort, or expense of conducting" the litigation. *See ICTSI Or.*, 22 F.4th at 1131 (citation omitted). Forgoing a fourth jury trial would "significantly shorten [the parties'] time in court" and "reduce [their] expenses." *Byrd v. Loc. 24, I.B.E.W*, 1977 WL 15446, at *1 (D. Md. June 13, 1977). The district court has already supervised three trials and is deeply familiar with the case—a bench trial would conserve resources and avoid the need to burden jurors. If this Court declines to review the question, the parties will be forced to devote time and resources to a fourth jury trial that this Court could later vacate, thus compelling a *fifth* trial to the bench. This Court can avoid that risk by resolving the issue now.

The Harrises suggested below that a fourth jury trial would not waste time or resources because, if this Court vacates the jury verdict, the district court could base its own findings on the jury-trial record. *See* Dkt. 1157 at 6. But even if the district court could rely on the jury-trial record, holding

another jury trial would still squander the time and resources of the parties, court, and jurors.

To warrant certification, it is enough if interlocutory appeal may reduce the "time, effort, or expense of conducting the district court proceedings." *ICTSI Or.*, 22 F.4th at 1131 (citation omitted). The Harrises do not—and could not—dispute that a jury trial would consume more "time," "effort," and "expense" than a bench trial. That is especially so here given the district court's familiarity with the case; the court has *already* ruled that the clear weight of evidence does not support punitive damages. A13.

A jury trial, by contrast, would present a host of new issues, including motions in limine, bifurcation, and jury instructions. That is to say nothing of the need to introduce evidence the district judge has already seen. The Harrises have submitted a Summary of Offer of Proof identifying fifteen "categories of evidence" they "intend to offer" a jury at a fourth trial. Dkt. 1160-1 at 3. Those categories include testimony from the OMG Girlz, confused consumers, and MGA witnesses; evidence of the similarities between fifteen dolls and the OMG Girlz; evidence of MGA's alleged pattern of copying; and evidence of MGA's financial condition. *Id.* at 3-4. As the district court explained, even if the court could rely on the jury-trial record on a future

19

remand, that "cannot justify the time, effort, and expense of [holding that] jury trial" only for this Court to vacate it.  A46.

The Harrises' contrary position cannot be squared with this Court's precedent.  In *Standard Oil*, 738 F.2d at 1022, this Court accepted an interlocutory appeal of a ruling that parties were "entitled to a jury trial."  If a jury trial were not a waste of resources simply because a judge can later refer to the trial record, then *Standard Oil* would be wrong.[1]

## II.  The Question Whether Punitive Damages Are Available Absent Actual Damages Also Warrants This Court's Review

This Court also should review the antecedent question whether California law permits recovering punitive damages in the absence of actual damages.  If punitive damages are unavailable, that would obviate the need for

---

[1] The Harrises once suggested that whether the Constitution requires a jury trial on punitive damages is irrelevant because MGA supposedly consented to a prior jury trial on punitive damages.  Dkt. 1140 at 6.  As MGA has consistently maintained, it never consented to a jury trial.  Dkt. 1139 at 6 n.2.  Regardless, the Harrises abandoned this argument when opposing certification, and rightly so.  *See* Dkt. 1150-1 at 8; Dkt. 1157 at 6.  This Court has already held that when a court vacates a jury verdict on "a specific issue as to which there was no right to a jury trial," "the parties … may decide afresh on remand whether … to consent to a jury retrial."  *Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*, 28 F.4th 35, 39-41 (9th Cir. 2022).  If punitive damages here are equitable, MGA may freely refuse a fourth jury trial.  *Id.* at 41.

20

a new trial entirely and would bring the protracted district-court proceedings to an end.

The district court agreed that this Court can review the question. A50 n.3. That is because on interlocutory appeal, this Court may review a district court's prior "material" ruling that "provides grounds for reversal of the [certified] order." *In re Cinematronics, Inc.*, 916 F.2d 1444, 1449 (9th Cir. 1990). And the issues whether punitive damages must be tried to a jury and whether punitive damages are available in the first place are "inextricably tied." A50 n.3 (citation omitted).

This Court should determine whether punitive damages are available here. In so doing, the Court can save the parties and the district court from yet another trial. And it can correct the district court's ruling, which flouts an unbroken line of authority from the California Supreme Court. Time and again, that court has squarely held that "[i]n California, as at common law, actual damages are an absolute predicate for an award of exemplary or punitive damages." *Kizer v. County of San Mateo*, 53 Cal. 3d 139, 147 (1991), *overruled on other grounds*, 14 Cal. 5th 758 (2023).

In California, punitive damages require "a showing which would entitle the plaintiff to an award of actual damages." *Mother Cobb's Chicken*

21

*Turnovers v. Fox*, 10 Cal. 2d 203, 205-06 (1937) (citation omitted). The California Supreme Court so held a century ago in *Clark v. McClurg*, 215 Cal. 279 (1932), where the court laid down the rule—"exemplary damages are not recoverable in the absence of a showing of actual damages." *Id.* at 282. The California Supreme Court reaffirmed that rule in *Mother Cobb's Chicken Turnovers*, 10 Cal. 2d 203. There, a jury awarded only punitive damages and an injunction. *Id.* at 205-06. The court reversed the punitive damages award, explaining that "punitive damages are never more than an incident to a cause of action for actual damages." *Id.* at 206. Since then, California's high court has never wavered in ruling that "[p]unitive damages are not recoverable where compensatory damages are not." *Contractor's Safety Ass'n v. Cal. Comp. Ins. Co.*, 48 Cal. 2d 71, 77 (1957); *see, e.g., Kizer*, 53 Cal. 3d at 147 (same); *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1004 (1993) (same).

This Court too has recognized this rule. In *California v. Altus Finance S.A.*, 540 F.3d 992 (9th Cir. 2008), this Court vacated a punitive damages award where a jury awarded restitution but no actual damages. *Id.* at 1001-04. This Court did so because "California law is well-established and quite clear": "[A]ctual damages are an absolute predicate for … punitive damages." *Id.* at 1001 (citation omitted).

22

Against this body of precedent, the district court posited that actual damages are not necessary when the underlying award resembles "restitution." A14, A49-50. That was wrong. The district court relied on *Ward v. Taggart*, 51 Cal. 2d 736 (1959), which awarded both restitution and punitive damages. A50. But the *Ward* court permitted punitive damages because the plaintiffs suffered thousands of dollars in costs from a fraudulent overcharge, and the restitution compensated them for those costs. 51 Cal. 2d at 739-41. Today, California law defines that kind of recovery as "damages." Cal. Civ. Code § 3343; *see also Channell v. Anthony*, 58 Cal. App. 3d 290, 311-12 (Ct. App. 1976) (recounting legislative history). *Ward* does not permit punitive damages where, as here, the plaintiffs incur no costs and recover no damages.

That leaves the district court's citations to two intermediate state-court decisions that also permitted restitution and punitive damages. A14, A49. For starters, no intermediate state court could override California's highest court, which permits punitive damages only "so long as actual, substantial damages have been awarded." *Potter*, 6 Cal. 4th at 1004 (citation omitted). Regardless, in both cases the district court cited, the plaintiffs "sustained actual damage" from a loss of property and received compensation "in the form of specific restitution." *Millar v. James*, 254 Cal. App. 2d 530, 533 (1967); *see also Horn*

23

*v. Guaranty Chevrolet Motors*, 270 Cal. App. 2d 477, 483-84 (1969). Neither case suggests that punitive damages are permissible here, without any loss of property or compensatory award.

The district court also wrongly refused to apply *Altus Finance*, which vacated a punitive damages award despite a restitution award. 540 F.3d at 1001-04. The district court noted that the defendant in *Altus Finance* was "not legally liable for fraud," whereas "the jury found MGA liable" for a tort. A48 n.2. That distinction is immaterial, because the defendant in *Altus Finance* was liable for something else (conspiracy), meaning that here and in *Altus Finance*, a jury found liability. 540 F.3d at 996. The district court also stressed that the jury in *Altus Finance* expressly found no actual damages, whereas the Harrises did not seek actual damages. A48 n.2. That distinction cannot matter. Otherwise, a party could end-run the actual damages requirement by not seeking them. And the district court's reasoning would permit punitive damages where actual damages are so frivolous that a plaintiff foregoes them but forbid punitive damages when a jury denies actual damages in a close call. That makes no sense.

The district court therefore ignored the dispositive question: Did the Harrises recover actual damages? The answer is no. The "jury never analyzed

24

compensatory damages, as the OMG Girlz opted for the jury to only consider disgorgement" of MGA's profits. A48 n.2. Still further, the district court found that the Harrises failed to show any "financial harm" from lost sales. Dkt. 1090 at 9. The parties thus find themselves on the brink of a fourth trial on punitive damages, even though California law prohibits punitive damages in these circumstances. This Court should not permit that manifest waste of resources. It should instead grant interlocutory review and reverse the district court's decision.

## CONCLUSION

For the foregoing reasons, the Court should grant the petition.

Respectfully submitted,

/s/ *Lisa S. Blatt*

MARK A. FINKELSTEIN
ELLEN S. KIM
UMBERG ZIPSER LLP
 *1920 Main Street, Suite 750*
 *Irvine, CA 92614*
 *(949) 679-0052*
 *mfinkelstein@uzllp.com*
 *ekim@uzllp.com*

LISA S. BLATT
AMY M. SAHARIA
KIMBERLY BROECKER
WILLIAMS & CONNOLLY LLP
 *680 Maine Avenue SW*
 *Washington, DC 20024*
 *(202) 434-5000*
 *lblatt@wc.com*
 *asaharia@wc.com*
 *kbroecker@wc.com*

*Attorneys for Plaintiff-Petitioner
MGA Entertainment Inc., and
Counter-Defendant-Petitioner
Isaac Larian*

DATED: November 30, 2025

25

## STATEMENT OF RELATED CASES

On May 28, 2025, Petitioners filed a Notice of Appeal in *MGA Entertainment Inc. v. Harris, et al.*, No. 25-3448. On June 3, 2025, the Ninth Circuit stayed all proceedings other than mediation pending the district court's resolution of the Rule 50 and 59 motions.

/s/ *Lisa S. Blatt*
LISA S. BLATT

DATED: November 30, 2025

# CERTIFICATE OF COMPLIANCE

This petition complies with the type-volume limitation of Cir. R. 5-2(b) and Cir. R. 32-3(2) because it contains 5,288 words.

This petition complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) and (a)(6) because this petition has been prepared in a proportionately spaced typeface using Microsoft Word 2016 and Century Expanded 14-point font.

/s/ *Lisa S. Blatt*
LISA S. BLATT

DATED: November 30, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on November 30, 2025, I electronically filed the foregoing petition on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Case Management System (ACMS).

/s/ *Lisa S. Blatt*
LISA S. BLATT

DATED: November 30, 2025

# APPENDIX

# TABLE OF CONTENTS

Order Regarding Motion and Renewed Motion for Judgment as a Matter of
Law or, in the Alternative, for New Trial or Remittur
(July 8, 2025), Dkt. 1133 ..............................................................................A1

Order Regarding Structure of New Trial
(Sept. 24, 2025), Dkt. 1144 .........................................................................A34

Order Regarding Motion for Certification of Interlocutory Appeal
(Nov. 20, 2025), Dkt. 1172 ..........................................................................A41

i

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-11548-JVS-AGR | Date | July 8, 2025 |
| Title | MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al. | | |

Present: The Honorable **James V. Selna, U.S. District Court Judge**

| Elsa Vargas | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** **[IN CHAMBERS] Order Regarding Motion and Renewed Motion for Judgment as a Matter of Law or, in the Alternative, for New Trial or Remittitur [1121]**

Plaintiffs and Counterdefendants MGA Entertainment, Inc. and Isaac Larian (collectively, "MGA") file a motion for judgment as a matter of law or, in the alternative, new trial or remittitur. (Mot., Dkt. No. 1121.) Defendants and Counterclaimaints Clifford "T.I." Harris, Tameka "Tiny" Harris, and OMG Girlz LLC (collectively, "Harrises" or "OMG Girlz") filed an opposition. (Opp'n, Dkt. No. 1124.) MGA filed a reply. (Reply, Dkt. No. 1125.)

For the following reasons, the Court **GRANTS in part** and **DENIES in part** the motion. With respect to punitive damages, the Court **GRANTS** the motion, on the condition that the Harrises do not accept a remittitur of $1. The Harrises shall lodge a filing of their decision with the Court within 14 days upon the issuance of this Order. If the Harrises reject remittitur, the Parties shall meet and confer and file a joint proposed briefing schedule for the structure of a new trial.

Regarding the Lanham Act counterclaim and common law misappropriation counterclaim, the Court **DENIES** the motion. The Court **DENIES** the motion with respect to both the request for declaratory judgment and for judgment as a matter of law for all claims against Mr. Larian individually.

## I. BACKGROUND

### A. *The OMG Girlz and MGA Entertainment, Inc.*

| | | |
|---|---|---|
| CV-90 (06/04) | CIVIL MINUTES - GENERAL | Page 1 of 33 |

**A1**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  2:20-cv-11548-JVS-AGR                    Date   July 8, 2025

Title   MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al.

This case arises from an alleged trade dress infringement and misappropriation of name, likeness, or identity of the OMG Girlz brand by the entertainment and toy company, MGA, over the L.O.L Surprise! O.M.G. dolls line.  On December 22, 2020, MGA filed a complaint against the OMG Girlz seeking declaratory judgment whether the L.O.L. Surprise! O.M.G. dolls and associated lines of toy products infringed the intellectual property rights of the OMG Girlz' mark.  (See Compl., Dkt. No. 1.)

MGA is a large toy company that designs, develops, and distributes children's toys.  (See Summary Judgment Order, Dkt. No. 326 at 2.)  In 2001, MGA released the enormously successful "Bratz" doll.  (Id.)  MGA CEO Isaac Larian ("Larian") credits MGA with having "invented diversity in dolls," starting with the Bratz doll.  (Trial Tr. 9/19/24 AM 97:12–13.)

Tameka "Tiny" Harris is a famous singer-songwriter who formed a teenage female vocal group called the OMG Girlz.  (Trial Tr. 9/4/24 AM 33:1–2.)  The core members of the group are Zonnique Pullins, Breaunna Womack, and Bahja Rodriguez.  (Id.)  The individual members of the OMG Girlz are not parties to the instant action.

In 2016, MGA launched a collectible series of toys called L.O.L. Surprise!.  (Trial Tr. 9/11/24 AM 41:18–42:20.)  The collection was a big success for MGA, quickly becoming a top selling toy in the United States.  (Id.)  In 2019, MGA released a spin-off line of fashion dolls, called L.O.L. Surprise! O.M.G. Outrageous Millennial Girls.  (Trial Tr. 9/13/24 AM 23:3–6, 25:2–26:1.)

B.   *The Lawsuit Commences*

On December 8, 2020, the Harris Parties sent a cease-and-desist letter to MGA claiming that MGA had copied the OMG Girlz' signature look and demanding that MGA stop distributing the L.O.L. Surprise! O.M.G. dolls.  (Dkt. No. 13; Trial Tr. 9/4/24 AM 93:21–94:8.)  Immediately thereafter, MGA filed suit against the OMG Girlz in an effort to clarify the rights of the parties.  (Trial Tr. 9/19/24 PM 43:13–44:4.)  On February 22, 2021, the OMG Girlz answered and filed a counterclaim alleging violations of the Lanham Act, statutory and common law misappropriation of name or likeness, and statutory and common law unfair competition claims.  (Dkt. No. 13.)

In July 2022, the Court granted summary judgment in favor of MGA on more than

CV-90 (06/04)                    **CIVIL MINUTES - GENERAL**                    Page 2 of 33

A2

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    2:20-cv-11548-JVS-AGR                    Date    July 8, 2025

Title    MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al.

half of the dolls alleged to be infringing—40 dolls in total. (Summary Judgment Order at 23, 33.) Additionally, the Court granted summary judgment in favor of MGA on the statutory misappropriation claim, finding that the OMG Girlz did not have a claim under Cal. Civ. Code § 3344. (Id.) Finally, the Court granted summary judgment in favor of MGA on the unfair competition law claims. (Id.)

On May 9, 2023, the remaining claims were tried before a jury.[1] (Dkt. No. 777.) On May 26, 2023, the jury returned a verdict in favor of MGA on both remaining causes of action. (Id.) The jury found that the OMG Girlz had not proven that the L.O.L. Surprise! O.M.G. doll line infringed the OMG Girlz' asserted trade dress or misappropriated the OMG Girlz' name, likeness, or identity. (Id.) The Court additionally found that MGA was entitled to declaratory relief. (Id.) On June 13, 2023, the Court issued its judgment. (Id. at 2.)

However, following the conclusion of that trial, the Supreme Court issued its ruling in Jack Daniel's Props., Inc. v. VIP Prods. LLC, 599 U.S. 140 (2023). Following the Jack Daniel's case, this Court held that one of the jury instructions related to the Harrises' trade dress claim was erroneous and granted a new trial on both of the Harrises' claims. (Dkt. No. 860.)

C.    *The September 2024 Trial and Jury Verdicts*

In September 2024, the third trial in this lawsuit began. (Dkt. No. 944; Trial. Tr. 9/3/24 AM.) Prior to trial, the Court ruled that any verdicts on equitable issues were to be regarded as advisory verdicts. (Final Pretrial Conference Order, Dkt. No. 924 at 2.) At trial, the Harrises narrowed the scope of their claim and sought disgorgement for seven of the 32 remaining dolls. (See Trial Tr. 9/18/24 AM 7:21–23.)

On September 23, 2024, the jury reached its verdict. (Verdict, Dkt. No. 1010.) With regard to the Lanham Act, the jury found that the Harrises had established by a preponderance of the evidence that MGA infringed on the OMG Girlz' trade dress with respect to all seven dolls: Chillax, Roller Chick, Metal Chick, Bhad Gurl, Prism, Miss Divine, and Runaway Diva. (See id. at 2–4.) The jury found that there was no First

---

[1] The first trial ended in a mistrial. The second trial began in May 2023.

A3

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   2:20-cv-11548-JVS-AGR                    Date   July 8, 2025

Title   MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al.

Amendment defense and that MGA's trade dress infringement was willful.  (Id. at 5.)
The jury awarded $17,872,253 as an advisory figure for damages.  (Id.)

With respect to common law misappropriation, the jury found that the OMG Girlz
had proven by a preponderance of the evidence that the dolls misappropriated the OMG
Girlz' name, likeness, or identity.  (Id. at 2.)  The jury found by clear and convincing
evidence that MGA acted with oppression, fraud, or malice in this misappropriation.  (Id.
at 6.)  The jury awarded $17,872,253 as an advisory figure.  (Id.)  The jury also awarded
punitive damages of $53,616,759.  (Punitive Damages Verdict, Dkt. No. 1012 at 1.)

In deciding on MGA's claim for declaratory relief, the jury also concluded that six
additional dolls infringed on the OMG Girlz' trade dress and misappropriated their
name, likeness, or identity: Downtown B.B., Punk Grrrl, Virtuelle, Honeylicious, Miss
Independent, and City Babe.  (Id. at 7–14.)  The jury found that one doll, Shadow,
infringed on the OMG Girlz' trade dress only, and another doll, Miss Glam,
misappropriated the OMG Girlz' name, likeness, or identity.  (Id.)  The jury determined
that the following 13 dolls did not infringe on the OMG Girlz' trade dress or
misappropriate their name, image, or likeness: Ferocious, Fame Queen, Uptown Girl,
Class Prez, Rocker Boi, Lady Diva, Sweets, Spicy Babe, Miss Royale, B-Gurl, Major
Lady, Cosmic Nova, 24K D.J., Snowlicious, Candylicious, Moonlight B.B., and Gamma
Babe.  (Id.)

On April 15, 2025, the Court denied the Harrises motion for permanent injunction
and prejudgment interest, but awarded post-judgment interest.  (Permanent Injunction
Order, Dkt. No. 1113.)

D.     *The Present Motion*

The Court entered its Final Judgment on April 29, 2025.  (Final Judgment, Dkt.
No. 1118.)  On May 27, 2025, MGA filed the present motion requesting judgment as a
matter of law or, in the alternative, new trial or remittitur.

**II. LEGAL STANDARD**

A.     *Renewed Judgment as a Matter of Law*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   2:20-cv-11548-JVS-AGR                              Date   July 8, 2025

Title   MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al.

Pursuant to Fed. R. Civ. P. 50(a), a motion for judgment as a matter of law must be made before the case is submitted to the jury and must specify the judgment sought and the law and facts that entitle the movant to the judgment.  Fed. R. Civ. P. 50(a).  If the Court does not grant the motion, then "the court is considered to have submitted the action to the jury subject to the court's later  deciding the legal questions raised by the motion."  E.E.O.C. v. Go Daddy Software, Inc., 581 F.3d 951, 961 (9th Cir. 2009); Zion v. Cty. of Orange, No. 8:14-cv-01134, 2019 U.S. Dist. LEXIS 228259, at *15 (C.D. Cal. Apr. 17, 2019).

A party may move to renew its motion for judgment as a matter of law under Fed. R. Civ. P. 50(a) within twenty-eight days after the entry of judgment, or if the motion addresses a jury issue not decided by a verdict, no later than twenty-eight days after the jury was discharged.  Fed. R. Civ. P. 50(b).  It may also move in the alternative a request for a new trial under Fed. R. Civ. P. 59.  Id.

A moving party is entitled to judgment as a matter of law if the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion that is contrary to the jury's verdict.  Go Daddy Software, 581 F.3d at 961.  A jury's verdict "must be upheld" if it is supported by substantial evidence, even where it "is possible to draw a contrary conclusion."  Pavao v. Pagay, 307 F.3d 915, 918 (9th Cir. 2002). In ruling on a motion for judgment as a matter of law, the court may: "(a) allow the judgment to stand, (b) order a new trial, or (c) direct entry of judgment as a matter of law."  White v. Ford Motor Co., 312 F.3d 998, 1010 (9th Cir. 2002).  Judgment is appropriate "if there is no legally sufficient basis for a reasonable jury to find for that party on that issue."  Costa v. Desert Palace, Inc., 299 F.3d 838, 859 (9th Cir. 2002).  Additionally, when making its determination, the Court cannot "make credibility determinations" and "must disregard all evidence favorable to the moving party that the jury is not required to believe."  Tan Lam v. City of Los Banos, 976 F.3d 986, 995 (9th Cir. 2020) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 159-51 (2000)).

B.    *New Trial*

Pursuant to Rule 59(a), in an action in which there has been a jury trial, a new trial may be granted "for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Courts may grant new trials, "even though the verdict is

CV-90 (06/04)                          CIVIL MINUTES - GENERAL                          Page 5 of 33

A5

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    2:20-cv-11548-JVS-AGR                         Date    July 8, 2025

Title    MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al.

supported by substantial evidence, if the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial court, a miscarriage of justice." United States v. 4.0 Acres of Land, 175 F.3d 1133, 1139 (9th Cir. 1999) (internal quotations omitted). Authority to grant a new trial "is confided almost entirely to the exercise of discretion on the part of the trial court." Allied Chem. Corp. v. Daiflon, 449 U.S. 33, 36 (1980) (per curiam). However, a trial court may "not grant [a new trial] simply because the court would have arrived at a different verdict." Pavao, 307 F.3d at 918.

## III. DISCUSSION

### A.    *Punitive Damages Award*

MGA argues that the Court should vacate the punitive damages award or, in the alternative, order a remittitur or new trial. (Mot. at 10.) Specifically, MGA contends that: (1) it did not act willfully, and (2) the award is excessive and violates the Due Process Clause. (Id. at 10–14.) MGA also reiterates prior arguments that punitive damages are not available for a claim of common law misappropriation.[2]

### 1.    Waiver of Punitive Damages Argument

As an initial matter, the Harrises argue that MGA has waived its punitive damages argument because it did not move for judgment as a matter of law on this issue before the jury's verdict. (Opp'n at 2.) MGA correctly notes that it is not moving for judgment as a matter of law on punitive damages and that it did not do so at trial under Federal Rule Civil Procedure 50(a). (Reply at 9.) Rather, MGA is requesting punitive damages relief under Rule 59 and the Due Process Clause. Accordingly, MGA's argument is not waived.

### 2.    Willfulness of MGA's Conduct

---

[2] The Court will not address this argument. As MGA has respectfully noted, the Court has already ruled on this issue and found that punitive damages are available for a claim of common law misappropriation. (See Equitable Issues Order, Dkt. No. 1090 at 12–14.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    2:20-cv-11548-JVS-AGR                    Date    July 8, 2025

Title    MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al.

In California, punitive damages are available "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Waits v. Frito-Lay, Inc., 978 F.2d 1093, 1104 (9th Cir. 1992) (citing Cal. Civ. Code § 3294(a)). Malice is defined as despicable conduct carried out with a "willful and conscious disregard of the rights or safety of others." Id. Likewise, fraud requires a finding of "intentional misrepresentation, deceit, or concealment . . . with the intention on the part of the defendant of thereby depriving a person of property or legal rights[.]" Cal. Civ. Code § 3294(c)(3). Finally, oppression is defined as "despicable conduct" done with a "conscious disregard of that person's rights." Id. § 3294(c)(2). Thus, there must be a finding of intent, conscious disregard, or willfulness to support punitive damages in California.

The Harrises argue that the evidence at trial supports a finding of willfulness. (Opp'n at 3.) The Harrises advance three reasons why the evidence supports a finding of willfulness: (1) lead designers' knowledge about the OMG Girlz, (2) overlapping markets, and (3) MGA's lack of credibility following brazen misappropriation of other celebrity identities. (Opp'n at 4–5.) At oral argument, the Harrises presented more argument for why the evidence supports a finding of willfulness.

### a.    Designers' Knowledge

The Harrises presented evidence at trial that lead designers, including Blanche Consorti, knew of the OMG Girlz in December 2019, prior to the creation of all of the infringing dolls. (Trial Tr. 9/10/24 PM 47:5–11.) Through Consorti, the Harrises presented evidence of an email exchange where MGA employees discuss the lyrics of a song, which they believed included a reference to the "OMG dolls." (Id. 47:9–49:25.) To the employees' dismay, however, a fellow coworker notes that the song was likely a reference to the "OMG Girlz" and not their OMG dolls. (Id.) Consorti appears to neither confirm nor deny any prior knowledge of the OMG Girlz. (Id.) Despite this confusion, the designers never reached out to the OMG Girlz to investigate. (Id. at 85.)

As the Court previously found in its Equitable Issues Order:

The email exchange and testimony tend to support a finding that some employees and at least one designer, Consorti, were aware of the OMG Girlz existence in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    2:20-cv-11548-JVS-AGR                    Date    July 8, 2025

Title    MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al.

December 2019.  However, this evidence largely fails to show that there was a deliberate intent to copy their trade dress upon learning of their identity.

(Equitable Issues Order, Dkt. No. 1090 at 7.)

The Court once again agrees that this evidence is insufficient to show willfulness or intent.  At best, this evidence shows that the designers saw a passing reference to the OMG Girlz and were negligent in not following up with the OMG Girlz having, themselves, been momentarily confused.  Yet, nothing in the email thread provides clear and convincing evidence that Consorti or other designers knew of the OMG Girlz trade dress or willfully made use of that knowledge to create the infringing dolls.

### b.    Overlapping Markets

The Harrises also presented evidence at trial that MGA's target audience overlapped with the OMG Girlz' audience.  (Trial Tr. 9/13/24 AM 83:6–24.)  While overlapping markets can be indicative of intentional efforts to deceive, see Playboy Enters. v. Netscape Comms. Corp., 354 F.3d 1020, 1028 (9th Cir. 2004), it can equally be unexceptional.  In this case, the overlapping market was that of Black/African-American mothers and Hispanic mothers.  (Trial Tr. 9/13/24 AM 83:12–16.)

This overlapping market, however, was partially explained by Mr. Larian, who testified that he was proud that Bratz was founded with a diverse line of dolls and has continued to sell its diverse brand of dolls well before the 2019 line of L.O.L. Surprise! dolls.  (Trial Tr. 9/19/24 AM 125:16–20.)  Further, Mr. Larian explained that MGA sells to "every girl, every nationality, [and] every color," and that it was Bratz' business practice to study the reactions and preferences of different demographics for dolls.  (Id. 126:19–25.)  Thus, the mere coincidence that the infringing dolls appealed to some of the same consumers that followed the OMG Girlz does not support a finding of intent to deceive, nor a finding based on clear and convincing evidence.

### c.    MGA's Lack of Credibility

The Harrises argue that MGA's story of innocence is called into question by the lack of credibility of its doll designers.  (Opp'n at 4.)  The Court has previously described the credibility issue as follows:

CV-90 (06/04)                    CIVIL MINUTES - GENERAL                    Page 8 of 33

A8

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    2:20-cv-11548-JVS-AGR                          Date    July 8, 2025

Title    MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al.

On numerous occasions, witnesses, particularly designers, were confronted with dolls that appeared to copy famous celebrities. Rather than concede copying, the designers attempted to explain away blatantly obvious design features copied from real individuals.[3] (See Trial Tr. 9/18/24 AM 32:5–34:14; Trial Tr. 9/19/24 AM 61:23–62:19.)

(Equitable Issues Order at 8.)

The Court agrees, as it now can on a motion for new trial,[4] that these witnesses lost credibility as a result of the testimony about copying other celebrities. However, the Court still finds that while this evidence is the strongest evidence of willfulness or intent advanced by the Harrises, it falls short of clear and convincing. Indeed, MGA conceded to using other celebrities as inspiration for their dolls and even discussed forming partnerships with celebrities. (See Trial Tr. 9/10/24 PM 34:21–35:4; Trial Tr. 9/18/24 PM 111:15–19; Trial Tr. 9/19/24 AM 62:11–14.) However, when it came to the OMG Girlz, there was no reliable evidence that MGA had any knowledge of the group's trade dress or desire to use their likeness to create the infringing dolls. The strong appearance that MGA copied other celebrities does not provide clear and convincing evidence that such was the case for the OMG Girlz.

Put together, the evidence falls short of showing willfulness, intent, or conscious disregard with respect to MGA's conduct. Where, as here, "the verdict is contrary to the clear weight of the evidence" or "would result in a miscarriage of justice," the Court has "the right, and indeed the duty, to weigh the evidence . . . and to set aside the verdict of

---

[3] For instance, during the cross of Consorti, she was asked whether a doll called "Piano King" (who clearly looks like Elton John), copied the famous singer Elton John. (Trial Tr. 9/18/24 AM 32:16–23.) Consorti maintained that it was not a copy of Elton John. (Id.) Consorti was shown an MGA doll called "Shimone Queen," with one white sparkly glove, glittery black costume, large glasses, and curly black hair (strongly resembling Michael Jackson). Yet, Consorti stated "[t]hat's a coincidence." (Id. 34:1–35:4.) The same pattern was repeated with other famous celebrities such as Lady Gaga and Audrey Hepburn. (Id.)

[4] Unlike a Rule 50 motion, under Rule 59, the Court "can weigh the evidence and assess the credibility of the witnesses." See Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd, 762 F.3d 829, 845 (9th Cir. 2014).

A9

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   2:20-cv-11548-JVS-AGR                    Date   July 8, 2025

Title   MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al.

the jury[.]"  See Fenner v. Dependable Trucking Co., Inc., 716 F.2d 598, 602 (9th Cir. 1983).  Therefore, the jury's verdict on punitive damages cannot be sustained.

### d.    Logo Change and Infringement During Trial

The Harrises argue that MGA's conduct after learning about the OMG Girlz further proves willfulness of conduct.  Specifically, after the 2019 email thread where Consorti and other designers discuss the OMG Girlz, MGA changes its logo from "L.O.L. Surprise! O.M.G." to include "Outrageous Millennial Girls" underneath the O.M.G.  The Harrises argue that "outrageous millennial girls" brought the infringing dolls closer to the OMG Girlz trade dress.  Further, the Harrises argue that MGA's continued release of infringing dolls demonstrates its intent to capitalize on the OMG Girlz likeness and identity.

The Court disagrees.  First, as noted, there is scarce evidence that MGA was aware of the OMG Girlz in 2019 such that they would act in a way to intentionally copy the trade dress.  Thus, it follows that the logo change in 2019 was not indicative of any intent to copy.  Second, even if there was sufficient knowledge in 2019 to show an intent to copy, the logo change to include "outrageous millennial girls" falls far short from demonstrating willfulness.  The change in logo can equally (if not more reasonably) be viewed as MGA distancing itself from the OMG Girlz.  MGA notably did not use "girlz"[5] in its logo rework nor do the OMG Girlz claim that the OMG in their name stands for "outrageous millennial girls."  Thus, this evidence does not support a clear and convincing finding of willfulness or intent.

Nor does the release of more infringing dolls support a finding of willfulness.  The Harrises argue that MGA's continued infringement after the beginning of trial should support a finding of willfulness.  However, the release of these dolls is equally explained by Larian and MGA's conviction that it was not infringing on the trade dress because of the reasonable dissimilarities in the dolls (such as skin color, clothing, style, and names).  See San Miguel Pure Foods Co., inc. v. Ramar Int'l Corp., 625 F. App'x 322, 325 (9th

---

[5] And even assuming MGA did use "Girlz," Larian testified that MGA has used the "z" in Girlz for products dating back as far as ten years before the OMG Girlz formed.

A10

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   2:20-cv-11548-JVS-AGR                    Date   July 8, 2025

Title      MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al.

Cir. 2015) ("Infringement is not willful if the party reasonably believes its usage of a trademark is not barred by law.")

### e.   Lora Stephens

The Harrises next argue that Lora Stephens' testimony demonstrates a willfulness or intent on the part of MGA and its designers.  Stephens began working with MGA in 2017 and began working as a product designer around 2019.  (Trial Tr. 9/18/24 PM 116:9–21.)  Stephens was aware of the OMG Girlz before she joined MGA.  (Trial Tr. 9/19/24 AM 74:1–3.)  Stephens also followed Tiny Harris on Instagram.  (Id. at 76:23–25.)  Stephens also had an image of Breaunna Womack on her Pinterest board that she used for inspiration to design dolls.  (Id. at 86:16–18.)  Finally, during her cross examination, the Harrises were able to demonstrate that MGA had incorrectly responded to an interrogatory when asked whether any employees knew of the OMG Girlz before the lawsuit commenced.  (Id. at 79:25–80:5.)  Stephens conceded that MGA had not asked her whether she knew of the OMG Girlz.  (Id. at 83:2–3.)

The Court finds that this evidence, too, fails to establish clear and convincing evidence of willfulness.  Just as with the 2019 email thread, Stephens' knowledge of the OMG Girlz does not demonstrate an intent to copy.  Rather, it shows that one designer had knowledge of the OMG Girlz while designing the infringing dolls.  Further, the evidence that MGA falsely represented an interrogatory response may create an inference that MGA was hiding those with knowledge (as opposed to mere mistake), but it likewise fails to show an intent to copy the trade dress.  The most persuasive evidence of an intent to copy coming from Stephens' testimony was the evidence regarding her Pinterest board, which had an image of Breaunna Womack on it.  While the jury could certainly have placed strong weight on this fact, the board also contained approximately 1,200 images, most of whom were Black women with various hair colors including purple, (see id. 86:10–25.)

### f.   CEO Isaac Larian's Testimony and Demeanor

Finally, the Harrises argue that MGA's CEO Isaac Larian's malicious demeanor at trial demonstrated a lack of respect for the OMG Girlz trade dress.  The Harrises are correct that, at times, Larian was blunt and dismissive towards the OMG Girlz.  For instance, Larian accused them of being extortionists and hustlers (see Trial Tr. 9/19/24

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    2:20-cv-11548-JVS-AGR                    Date    July 8, 2025

Title    MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al.

PM 51:24–52:4) and when describing the group said that their brand "ha[d] no value and that "[t]hey are nowhere," (id. at 111:13–22). Larian also likely lost a modicum credibility with the jury in his steadfast conviction that MGA's dolls didn't share any similarities with the OMG Girlz—particularly when juxtaposed with the similarities he noted were obvious when it came to his company's lawsuits against competitors.

However, while Larian's vituperous attitude was, at times, belittling, this does not demonstrate that he or the designers at MGA willfully copied the trade dress or even acted with conscious disregard. The Harrises argue that his testimony creates an inference that his actions follow his attitude, but his testimony equally creates an inference that he reasonably believes his dolls did not infringe and sought to protect the reputation of his designers and company. Thus, at best, Larian's demeanor contributes only tepidly to the side of willfulness.

### g.    Summary of Willfulness Evidence

On balance, the jury's finding of willfulness remains unsupported by the clear weight of evidence. The 2019 email thread among the designers only tenuously demonstrates knowledge of the OMG Girlz and entirely fails to link any such knowledge with an intent. Further, while the Harrises established that designer Lora Stephens had knowledge of the OMG Girlz, they failed to show a meaningful connection between that knowledge and willful infringement. These pieces, when put together, establish just one passing reference to the OMG Girlz in MGA internal emails and one image of a single band member on one product designer's Pinterest board that also contained over 1,200 similar fashion-related images. This is not clear and convincing evidence of willful infringement or conscious disregard for the rights of others.

With respect credibility, the Harrises were successfully able to discredit product designer Blanche Consorti when it came to the similarities between certain dolls not at issue and real life celebrities. The Court has noted that this evidence was perhaps the most significant evidence of willfulness because it created an inference that if MGA was willing to so blatantly ignore obvious similarities to other celebrities, that it might be so inclined to do so with the OMG Girlz. However, the blatant copying of other celebrities does not demonstrate that such was the case at hand. In order for this inference to hold weight, it must be coupled with independently strong evidence of intent or willfulness.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   2:20-cv-11548-JVS-AGR                    Date   July 8, 2025

Title   MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al.

Finally, the remaining evidence supporting willfulness can be equally explained if not better explained by non-willful alternatives. For instance, Larian's notably belittling attitude towards the OMG Girlz does not provide clear and convincing evidence of willful intent where it can equally be explained by his reasonable belief of non-infringement and desire to product his designers reputations. (See Trial Tr. 9/19/24 AM 111:2–15.) Likewise, the overlapping markets between the OMG Girlz and the L.O.L. Surprise! O.M.G. Dolls is unexceptional and credibly explained by the ethos of MGA as a company founded by an Iranian immigrant seeking to develop a market for diverse dolls sold to "every girl, every nationality, [and] every color." (See Trial Tr. 9/19/24 AM 125:16–126:25.)

In sum, the clear weight of evidence does not support a clear and convincing finding of willfulness, intent, or conscious disregard of the OMG Girlz' trade dress.

### H.   Remedy

Having found that the jury's verdict on punitive damages cannot stand, an entry of judgment on the original award of $53,616,759 would constitute a reversible error. Id. at 603. Instead, "[w]hen the court . . . determines that the damages award is excessive, it has two alternatives. It may grant defendant's motion for new trial or deny the motion conditional upon the prevailing party accepting a remittitur. Id.

"A remittitur must reflect 'the maximum amount sustainable by the proof.'" Oracle Corp. v. SAP AG, 765 F.3d 1081, 1094 (9th Cir. 2014). In this case, the Court finds that the maximum punitive damages award sustainable by the proof is $1. In assessing the evidence of MGA's willfulness or intent, the Court finds that this amount reflects the fair value of a punitive award for MGA's conduct.

At oral argument, the Harrises noted that they plan to reject remittitur and request a new trial. The Harrises shall lodge a filing of their decision with the Court 14 days of the issuance of this Order. If the Harrises reject remittitur, the Parties shall meet and confer and file a joint proposed briefing schedule for the structure of a new trial.

### 3.   California Law and Due Process

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   2:20-cv-11548-JVS-AGR                    Date   July 8, 2025

Title      MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al.

In the alternative, MGA argues that even if punitive damages are available, the amount awarded was improper under Cal. Civ. Code § 3294 and violates the Due Process Clause.

### a.      California Requirement for Actual Damages

First, MGA argues that punitive damages are improper where there are no actual damages. "California courts have long interpreted Section 3294 to require an award of compensatory damages, even if nominal, to recover punitive damages." California v. Atlus Finance S.A., 540 F.3d 992, 1000 (9th Cir. 2008); accord Mother Cobb's Chicken Turnovers, Inc. v. Fox, 10 Cal. 2d 203, 205 (1937) ("Actual damages must be found as a predicate for exemplary damages.")  However, "it is immaterial that plaintiff's recovery is in the form of specific restitution, rather than monetary damages." Horn v. Guaranty Chevrolet Motors, 270 Cal. App. 2d 477, 484 (1969); Millar v. James, 254 Cal. App. 2d 530, 533 ("[T]he fact that the plaintiff's recovery was in the form of specific restitution, rather than monetary damages, does not necessarily preclude an award of exemplary damages.")

In this case, the Court instructed the jury that "the specific items of damages claimed by the OMG Girlz" were "any profits that MGA received from the use of the OMG Girlz' name or identity or likeness. . . ." (Jury Instructions, Dkt. No. 1013 at 29.) The jury was then instructed that if "MGA's conduct caused the Harris Parties harm . . ., you must decide whether that conduct justifies an award of punitive damages." (Id. at 30.)  The jury ultimately awarded $17,872,253 in damages with the understanding that these damages reflected the profits that MGA received from the use of the OMG Girlz' name, identity, or likeness.  Therefore, punitive damages are not precluded under Cal. Civ. Code § 3294 simply on the basis that damages were provided by restitution.

### b.      Constitutional Limits

In BMW of N. Am., Inc. v. Gore, the Supreme Court provided three guideposts for determining whether a punitive damages award complies with due process: (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties. 517 U.S. 559, 575 (1996).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    2:20-cv-11548-JVS-AGR                            Date    July 8, 2025

Title    MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al.

### i.    Degree of Reprehensibility

"Reprehensibility of the alleged conduct is 'the most important indicium of the reasonableness' of punitive damages." Riley v. Volkswagen Grp. of Am., Inc., 51 F.4th 896, 902 (9th Cir. 2022) (citing State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 419 (2003)). In the Ninth Circuit, courts consider whether (1) the harm caused was physical as opposed to economic, (2) the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others, (3) the target of the conduct had financial vulnerability, (4) the conduct involved repeated actions or was an isolated incident, and (5) the harm was the result of intentional malice, trickery, or deceit, or mere accident. State Farm, 538 U.S. at 419.

The jury found that MGA's trade dress infringement was willful and found by clear and convincing evidence that MGA acted with fraud, oppression, or malice. (Jury Verdict at 5–6.) However, this Court has an independent obligation to consider the facts and apply the Gore factors. See Mattel, Inc. v. MGA Enters., Inc., 801 F. Supp. 2d 950, 953 (C.D. Cal. 2011). The Court will thus independently evaluate the degree of reprehensibility of MGA's conduct.

On the first factor, the Court finds that the harm was predominantly economic in nature, leaning against reprehensibility. Indeed, there was little evidence of emotional harm because the Court specifically precluded evidence of emotional distress damages. (Dkt. No. 521.) Moreover, many of the "intangible harms" claimed by the Harrises—such as sacrificing life opportunities and bleaching their hair—demonstrate only the OMG Girlz' desire to cultivate their trade dress and *not* any reprehensible misconduct on the part of MGA.

The second and third factors likewise weigh against a finding of reprehensibility. There is no evidence in the record to suggest that MGA acted with indifference or reckless disregard to the health or safety of others. Further, despite the Harrises contention that MGA's "money grab" theory proves economic vulnerability, the trial record shows that the Harrises were not financially vulnerable. (See e.g., Trial Tr. 9/4/24 AM 33:14–19 ("The OMG Girlz – they made quite a bit of money."); Trial Tr. 9/6/24 PM 67:6–16 (Mr. Harris stating "I already have money" and that he's not here for a "big money grab").)

A15

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   2:20-cv-11548-JVS-AGR                          Date   July 8, 2025

Title   MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al.

The fourth factor—repeated misconduct—favors reprehensibility. The jury found that MGA infringed the OMG Girlz' trade dress on several dolls over a period of years. This shows repeated misconduct. In coming to this conclusion, the Court does not find that the copying of other celebrities increases the reprehensibility of MGA's conduct nor does the Court find that MGA's "money grab" trial theory demonstrate repeated reprehensible conduct.

The final factor weighs against reprehensibility. As the Court discussed, the evidence does not support a finding of willfulness, intent, or conscious regard. Likewise, the evidence does not show that MGA acted with trickery, deceit, or malice when it infringed on the OMG Girlz' trade dress. The only evidence suggesting that MGA had knowledge of the OMG Girlz, as opposed to merely accidental infringement, is a single email thread where the doll designers confused OMG Dolls with OMG Girlz. At best, this conduct shows negligence.

On balance, the factors tend to show that MGA's conduct was not reprehensible.

> ii.   *Disparity Between Actual Harm and Punitive Damages Awarded*

MGA argues that there are no actual damages and thus *any* punitive damages award is both disproportionate and unreasonable. (Reply at 17.) As discussed, the Court rejects this contention and finds that the $17,872,253 serves as a form of damages sufficient to support exemplary damages. (See Supra, Section A.3.a.)

The Harrises note that the punitive damages award of $53,616,759 is precisely a 3:1 ratio of the award for disgorgement of profits. (Opp'n at 12.) This ratio passes constitutional scrutiny, even for cases where "there are significant economic damages and punitive damages are warranted but behavior is not particularly egregious. . . ." See Planned Parenthood of Columbia/Willamette Inc. v. American Coalition of Life Activists, 422 F.3d 949, 962 (9th Cir. 2005) (affirming that a 4:1 ratio was a good proxy for the limits of constitutionality where the behavior was not particularly egregious); State Farm, 538 U.S. at 419 (holding that an award within a single-digit ratio is more likely to comport with due process).

---

A16

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    2:20-cv-11548-JVS-AGR                    Date    July 8, 2025

Title    MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al.

> iii.    *Differences Between Punitive Damages and Civil Penalties in Comparable Cases*

MGA argues that the most direct analogous statute is Cal. Civ. Code § 3344. (Reply at 17.)  Section 3344 is the statutory partner of California's common law misappropriation and provides a statutory minimum award of $750 to a meritorious litigant.  See Miller v. Collectors Universe, Inc., 159 Cal. App. 4th 988, 1002 (2008).

The Court finds that § 3344 is a comparable civil penalty and favors upholding the $53,616,759 verdict.  The $750 statutory minimum was meant to provide "a simple, civil remedy" to non-celebrities who prevailed at trial but often could not prove damages under the common law.  Id.  However, it was not meant to limit litigants to $750 nor was it meant to represent the average award for such claims.  Indeed, the statute itself provides for "the greater of [$750] . . . or the actual damages suffered by [the claimant] . . . *and any profits from the unauthorized use*. . . . Punitive damages may also be awarded to the injured party[.]"  Id. at 1000 (quoting Cal Civ. Code § 3344) (emphasis added).

Thus, under the analogous statutory regime, an award of disgorgement of profits and a punitive damages additive would be appropriate.  This Gore factor supports upholding the $53,616,759 verdict.

> iv.    *Remittitur*

On balance, the Court finds that while MGA's conduct was not reprehensible, the $53,616,759 verdict is within the reasonable and proportionate constitutional ratio for punitive damages and level with comparable civil penalties.  Thus, remittitur is not warranted under the Due Process Clause.

> B.    *Common Law Misappropriation*

MGA argues that the Court should grant judgment as a matter of law on the misappropriation counterclaim or, alternatively, grant a new trial.  (Mot. at 14.) Specifically, MGA contends that: (1) the Harrises do not have standing, (2) the First Amendment protects its dolls, (3) there is not substantial evidence of misappropriation, (4) there is no actual harm, and (5) any harm is not attributable to MGA's conduct.

A17

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

Case No.   2:20-cv-11548-JVS-AGR                    Date   July 8, 2025

Title      MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al.

    1.    <u>Standing</u>

"[S]tanding can be challenged 'at any stage' of the case, . . . 'even after trial and the entry of judgment.'" <u>United States v. $1,106,775.00 in United States Currency</u>, 131 F.4th 710, 719 (9th Cir. 2025). "The existence of standing turns on the facts as they existed at the time the plaintiff filed the complaint." <u>Skaff v. Meridien N. Am. Beverly Hills, LLC</u>, 506 F.3d 832, 838 (9th Cir. 2007). However, as the litigation proceeds, the "manner and degree of evidence required" to challenge standing will increase accordingly. <u>See</u> <u>Lujan v. Defs. of Wildlife</u>, 504 U.S. 555, 561 (1992). "In response to a summary judgment motion . . . [a plaintiff] must 'set forth' by affidavit or other evidence 'specific facts' . . . which for purposes of the summary judgment motion will be taken to be true." <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992) (internal quotations and citation omitted). "[A]t the final stage, those facts (if controverted) must be 'supported adequately by the evidence adduced at trial.'" <u>Id.</u> (citation omitted).

This Court addressed standing in 2022 when it ruled on the first motion for summary judgment. (Summary Judgment Order at 23–24.) At the time, the Court found that the OMG Girlz had assigned their right of publicity to Grand Hustle and Pretty Hustle, both of which were parties to the action. (<u>Id.</u> at 24.) MGA now argues that that a 2012 contract between the Harrises and Interscope Records superseded the assignment to Grand Hustle and Pretty Hustle. (Mot. at 15.)

The Court finds that the Harrises still have standing. In its Summary Judgment Order, the Court unequivocally asserted that "[t]he Court agrees and finds that OMG Girlz assigned their right of publicity to Grand Hustle and Pretty Hustle, both of which are party to this action." (Summary Judgment Order at 24.) This conclusion was not merely a denial of MGA's motion for summary judgment on this issue, but instead a conclusive finding that the underlying contracts were uncontroverted and standing was

A18

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    2:20-cv-11548-JVS-AGR                    Date    July 8, 2025

Title    MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al.

proven as a matter of law.[6]  Had the Court merely found that the OMG Girlz had come forward with controverted evidence, it would have said so.

In reviewing the plain terms of the agreements, the 2012 contract terminated at the expiration of the exclusive artist agreement.  (Dkt. No. 148-8 at 3.)  At such time, the status of the OMG Girlz' publicity rights reverted back to the 2011 contract between the OMG Girlz, Grand Hustle, LLC, and Pretty Hustle LLC.  (Id.; see also Dkt. No. 148-7.)  Counter-Claimaints are not aware of any other written agreements assigning intellectual property rights.  (Decl. of Mark Finkelstein ("Finkelstein Decl."), Dkt. No. 148-3, Ex. I (Tameka Harris Dep.), at 98–99, 123:1–18.)  Accordingly, the Court finds that the Harrises still have standing.

> 2.    First Amendment Defense

The California Supreme Court has recognized the "tension between the right of publicity and the First Amendment."  Comedy III Prods., Inc. v. Gary Saderup, Inc., 25 Cal. 4th 387, 396 (2001).  California courts apply a test to determine "whether the new work merely supersede[s] the objects of the original creation . . . or instead adds something new, with a further purpose or different character."  Ross v. Roberts, 222 Cal. App. 4th 677, 685 (2013).  The central inquiry is whether the work is "transformative."  Id. (citing Comedy III, 25 Cal. 4th at 396).  A work is transformative if the "product containing a celebrity's likeness is so transformed that it has become primarily the defendant's own expression rather than the celebrity's likeness."  Comedy III, 25 Cal. 4th at 407.

At summary judgment, the Court concluded that it could not say "as a matter of law" that the Dolls were sufficiently transformed.  (Summary Judgment Order at 29.)

---

[6] The Court agrees, however, with MGA's position that had the Court relied on the summary judgment standard and merely denied MGA's motion on standing, that the Harrises would likely have needed to prove standing with evidence at trial.  See Bennett v. Spear, 520 U.S. 154, 168 (1997) (holding that a plaintiff "must ultimately support any contested facts with evidence adduced at trial"); Kumar v. Koester, 131 F.4th 746, 755 (9th Cir. 2025) ("In a case like this that proceeds to trial, the specific facts set forth by the plaintiff to support standing must be supported adequately by the evidence adduced at trial."); Diamond Resorts U.S. Collection Dev., LLC v. Pandora Marketing, LLC, 656 F. Supp. 3d 1073, 1083 (C.D. Cal. 2023) (same).

A19

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    2:20-cv-11548-JVS-AGR                                Date    July 8, 2025

Title    MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al.

Instead, the Court found that the question would be better presented to the trier of fact. (Id.)  At trial, the jury found that MGA had not proven by a preponderance of the evidence that its dolls were protected by the First Amendment.  (Jury Verdict, Dkt. No. 1010 at 5.)  The jury's finding was supported by ample trial evidence, including the exhibits of the dolls and testimony of Harrises regarding their trade dress.[7]  Further, while MGA provided witnesses to deny any similarity between the infringing dolls and the OMG Girlz, the jury was free to disregard these witnesses as not credible and thus reject the First Amendment defense.  Indeed, as the Court noted in its Equitable Issues Order, on numerous occasions, MGA's witnesses, "particularly designers," failed to concede to blatant copying of real life celebrities nor did these designers even attempt to argue for a transformative use of such dolls.  (See Equitable Issues Order, Dkt. No. 1090 at 8 (citing Trial Tr. 9/18/24 AM 32:5–34:14).)

On the basis of the trial record, the jury had substantial evidence to reject the First Amendment defense and the Court declines to exercise its discretion to grant a new trial on this issue.

### 3.    Evidence of Misappropriation

In California, a claim for common law misappropriation requires a plaintiff to prove: (1) the defendant's use of the plaintiff's name, likeness, or identity; (2) the misappropriation of plaintiff's name or likeness to the defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury.  See Newcombe v. Adolf Coors Co., 157 F.3d 686, 692 (9th Cir. 1998).  This is also known as the right of publicity.  Abdul-Jabbar v. Gen. Motors Corp., 85 F.3d 407, 413 (9th Cir. 1996).

MGA argues that there is not sufficient evidence to support the jury's finding that the second element is satisfied: misappropriation of plaintiff's identity.  First, MGA notes that the OMG Girlz inconsistently identified which dolls misappropriated their identity.  (Mot. at 19.)  MGA is correct that individual band members occasionally

---

[7] The Court does not agree with the Harrises that Mr. Larian "testified that MGA did **not** add something new to the OMG Girlz likeness."  (See Opp'n at 13.)  When asked whether MGA "started with the OMG Girlz likeness to make the O.M.G. dolls," Mr. Larian plainly testified "absolutely 1,000 percent no."  (Trial Tr. 9/19/24 PM 54:7–12.)  This was clearly not an admission to non-transformative use; but rather, a denial of copying at all.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    2:20-cv-11548-JVS-AGR                          Date    July 8, 2025

Title    MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al.

contradicted themselves.  (Compare Trial Tr. 9/12/24 PM 86:21–87:17 (Ms. Pullins stating that Ferocious and Fame Queen share her likeness) with Trial Tr. 9/12/24 AM 100:7–12 (Ms. Pullins stating that these dolls "are definitely Beyonce and Lady Gaga").)  At times, the group contradicted one another.  (Compare Trial Tr. 9/5/24 PM 103:1–104:2 (Ms. Womack stating that Roller Chick looked like Bahja Rodriguez) with Trial Tr. 9/12/24 PM 94:20–24 (Ms. Pullins stating that Roller Chick does not look like Ms. Rodriguez).)

Second, MGA claims that the differences in the dolls themselves contradicts a finding of misappropriation.  Specifically, when comparing the dolls to one another, they each have different hair lengths and textures, styles, skin tones, eye colors, outfits, and accessories.  (Mot. at 20.)  As a matter of law, a plaintiff cannot continually move the target of their identity because a "lack of stasis is inconsistent with a claim of appropriation."  Kirby v. Sega of America, Inc., 144 Cal. App. 4th 47, 56 (2006).

Neither of these rationales are persuasive.  The jury was presented with trial exhibits of the relevant dolls and the relevant photographs of the OMG Girlz.  While some of the infringing dolls may have had different styles and different looks, the jury was shown exhibits of the OMG Girlz in similar styles and looks.  The jury also heard testimony from the OMG Girlz, T.I. Harris, Tiny Harris, and others, about the OMG Girlz' identity and likeness, including their race, the clothes they wore, the names of their group, and the colors of their clothing and brand.  To be sure, the band members were not always consistent with their answers; but such inconsistency was a credibility determination properly placed with the jury.  Ultimately, the jury had substantial evidence with which to find that MGA misappropriated the OMG Girlz' identity and thus satisfied the second element.

4.    Actual Harm and Resulting Injury

A claim for common law misappropriation requires "resulting injury."  See Newcombe, 157 F.3d at 692.  "Resulting injury is the *sine qua non* of a cause of action for misappropriation of name."  Silvinsky v. Watkins-Johnson Co., 221Cal. App. 3d 799, 807 (1990).  The Court finds that, as a matter of law, this element has been satisfied and the jury's verdict is supported by the substantial weight of evidence.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    2:20-cv-11548-JVS-AGR                          Date    July 8, 2025

Title    MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al.

In California, disgorgement of unjustly earned profits is permitted "regardless of whether a defendant's actions caused a plaintiff to directly expend his or her own financial resources or whether a defendant's actions directly caused the plaintiff's property to become less valuable." In re Facebook, Inc. Internet Tracking Litig., 956 F.3d 589, 600 (9th Cir. 2020). Indeed, "[t]he principle of unjust enrichment . . . is broader than mere 'restoration' of what the plaintiff lost." Cty. of San Bernardino v. Walsh, 158 Cal. App. 4th 533, 542 (2007). "Many instances of 'liability based on unjust enrichment . . . do not involve the restoration of anything the claimant previously possessed . . . includ[ing] cases involving the disgorgement of profits . . . wrongfully obtained. . . .'" Id. (alterations in original). Thus, unjust enrichment may form the basis of a resulting injury for California right of publicity claim.[8]

In this case, the jury heard evidence that MGA profited from the OMG Girlz' name and likeness. The jury could have reasonably come to this conclusion on the basis of several witnesses, including the OMG Girlz themselves, the designers at MGA, and the Harrises damages expert, Christian Tregillis, who testified to profits of $17,872,253, (see Trial Tr. 9/12/24 AM 29:20–23). Moreover, the jury heard evidence from Mr. Larian that MGA will enter into sponsorships with famous celebrities like Paris Hilton and Kylie Jenner. (Trial Tr. 9/5/24 PM 42:2–43:20.) Together, the jury could have properly concluded on the basis of the evidence that MGA used the OMG Girlz name and likeness to create infringing dolls without paying the OMG Girlz for this use. Therefore, the Court will not award a new trial or judgment as a matter of law for failure to show resulting damages.

### 5.    Attributable to MGA's Conduct

"[T]he plaintiff bears the burden of presenting proof of gross revenue attributable to the defendant's unauthorized use of the plaintiff's likeness, and the defendant must then prove its deductible expenses." Olive v. General Nutrition Centers, Inc., 30 Cal. App. 5th 804, 814 (2018); Lindy Pen Co. Inc. v. Bic Pen Corp, 725 F.2d 1240, 1243 (9th

---

[8] See also Camacho v. Control Grp. Media Co., LLC, 2022 WL 3093306, at *28 (S.D. Cal. July 18, 2022) (noting that derivation of economic value from Plaintiff was sufficient to prove resulting injury); Kellman v. Spokeo, Inc., 599 F. Supp. 2d 877, 889 (N.D. Cal. 2022) (same).

A22

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  2:20-cv-11548-JVS-AGR                    Date  July 8, 2025

Title  MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al.

Cir. 1984) (discussing the shifting burden standard for trademark infringement claims made under 15 U.S.C. § 1117(a)).[9]

In the Equitable Issues Order, the Court found that the Harrises had satisfied their burden of presenting proof of gross revenue. (Equitable Issues Order at 14–16.) Thus, the burden appropriately shifted to MGA to explain the lack of attributability. (Id. at 16.) The Court reviewed MGA's arguments for 10% and 15% attributability and ultimately found that "neither [percentage] merit[ed] an equitable reduction in disgorgement" because neither figure could reliably discount attributability. (Id. at 17.) While the Court noted its skepticism that MGA's profits were 100% attributable to its infringement, (see Equitable Issues order at 16; Permanent Injunction Order, Dkt. No. 1113 at 14 n.10), the Harrises have nevertheless satisfied their burden to show gross revenue. Ultimately, the Harrises established common law misappropriation, showed that many dolls were purchased because of the unauthorized use, and then satisfied their burden with respect to gross revenue from the dolls.

   C.   *Lanham Act*

MGA argues that the Court should grant judgment as a matter of law or, in the alterative, new trial with respect to the trade dress claim. (Mot. at 23.) Specifically, MGA argues that: (1) The OMG Girlz do not have a protectable trade dress, (2) the Harrises did not establish secondary meaning, (3) the Harrises abandoned their trade dress, and (4) there is no likelihood of confusion. The Court takes each argument in turn.

   1.   Protectable Trade Dress

Trade dress protects "a combination of any elements in which a product is presented to a buyer, including the shape and design of a product." Art Attacks Ink, LLC v. MGA Enter. Inc., 581 F.3d 1138, 1145 (9th Cir. 2009) (internal quotations and citation omitted). Courts are instructed to consider this combination of visual elements

---

[9] The Court notes that the decision in Olive is specific to claims under Cal. Civ. Code § 3344. However, as this Court previously determined, § 3344 "complement[s]" common law misappropriation in California. Thus, the Court finds it appropriate to adopt and implement the statutory burden shifting approach for the common law claim.

A23

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    2:20-cv-11548-JVS-AGR                    Date    July 8, 2025

Title    MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al.

when "taken together," even if some elements are separately unprotectable. Clicks Billiards, Inc. v. Sixshooters, Inc., 251 F.3d 1252, 1258–59 (9th Cir. 2001).

### a.    Defining Trade Dress with Specificity

"[A] vague, broad and non-specific definition of trade dress not only makes it impossible for a court to apply the test of distinctiveness, but also raises the danger of overprotection, with resulting anti-competitive injury to competitors[.]" 1 McCarthy on Trademarks and Unfair Competition § 8:3 (5th ed.). MGA argues that the OMG Girlz defined trade dress is vague and not specific to what they claimed at trial. For the following reasons, the Court disagrees.

The jury heard evidence that the OMG Girlz trade dress consists of three parts: the name (1) "OMG GIRLZ," (2) "combinations of vibrant hair color, primarily in bright pink, vivid purple, and shades of blue," and (3) "experimental, fun, urban, and edge wardrobes and makeup, layered clothing, voluminous skirts . . . and bold, over the top clothing and accessories." (See Mot. at 24 (citing TX 5521).) The jury also heard testimony that this trade dress was curated over a period of 13 years and recognizable to fans. (Trial Tr. 9/12/24 AM 93:2–95:11.)

At trial, MGA focused on specific components of the trade dress and the band's evolving style to attempt to discredit it. Despite these efforts, the jury ultimately concluded that the OMG Girlz had a protectable trade dress. (Jury Verdict at 2.) This finding is supported by the clear weight of evidence.

### b.    Functionality

MGA next argues that the OMG Girlz could not have a protectable trade dress as a matter of law where the aesthetic elements were functional. (Mot. at 24.) "Trade dress protection extends only to design features that are nonfunctional." Clicks Billiards, 251 F.3d at 1258. "[A]esthetic functionality has been limited to product features that serve an aesthetic purpose *wholly independent* of any source-identifying function." Au-Tomotive Gold, Inc. v. Volkswagen of America, Inc., 457 F.3d 1062, 1073 (9th Cir. 2006) (emphasis added).

A24

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    2:20-cv-11548-JVS-AGR                     Date    July 8, 2025

Title    MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al.

MGA argues that the OMG Girlz' "ever-changing image" demonstrates that its aesthetics were wholly independent of its source-identifying purpose. (Mot. at 25.) Yet, the trial record contains several examples of the OMG Girlz testifying that their specific colors and outfits were, in fact, source-identifying. (See e.g., Trial Tr. 9/4/24 AM 39:19–23; 65:16–20; 90:3–10; Trial Tr. 9/12/24 AM 93:2–10; 95:22–96:10.). The mere fact that the OMG Girlz continued to develop their look over time does not mean that these looks became wholly aesthetic or lost their source-identifying purpose. Accordingly, the evidence supports a finding of non-functionality.

### c.    Visual Use

As noted, trade dress protects "a combination of any elements in which a product is presented to a buyer, including the shape and design of a product." Art Attacks Ink, 581 F.3d at 1145 (internal quotations and citation omitted). This mandate requires examining the overall visual image of the trade dress. Id.; see also Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc., 973 F.2d 1033, 1044 (2d Cir. 1992).

MGA argues that the words "OMG Girlz" are not part of the overall visual impression of the group. (Mot. at 25.) Thus, because "OMG Girlz" was a requisite to the trade dress, the claim cannot stand. (Id.) Once again, the Court disagrees. The jury was presented with an abundance of evidence linking the words "OMG Girlz" to the color combinations and style of clothing. (See e.g., Trial Tr. 9/6/24 100:13–16; Trial Tr. 9/13/24 AM 93:9–24; Trial Tr. 9/18/24 AM 76:14–25.)

MGA further argues that the OMG Girlz changing appearances defeats their trade dress. (Mot. at 26.) At trial, the jury heard evidence that the OMG Girlz have used the same signature colors, name, and experimental clothing for the last 13 years, including their 2024 tour. (Trial Tr. 9/12/24 AM 93:2–12.) Thus, this argument is likewise unavailing.

Accordingly, the jury's finding of trade dress is supported by the clear weight of the evidence.

### 2.    Secondary Meaning

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    2:20-cv-11548-JVS-AGR                     Date    July 8, 2025

Title    MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al.

To prove trade dress infringement, the plaintiff "must show that her design has attained secondary meaning." Art Attacks Ink, 581 F.3d at 1145 (citing Wal-Mart Stores, Inc. v. Samara Bros., 529 U.S. 205, 214 (2000)). "Secondary meaning can be established in many ways, including (but not limited to) direct consumer testimony; survey evidence; exclusivity, manner, and length of use of a mark; amount and manner of advertising; amount of sales and number of customers; established place in the market; and proof of intentional copying by the defendant." Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc., 198 F.3d 1143, 1151 (9th Cir. 1999). To establish secondary meaning, "a plaintiff must demonstrate 'a mental recognition in buyers' and potential buyers' minds that products connected with the [mark] are associated with the same source.'" Art Attacks Ink, 581 F.3d at 1145 (citing Japan Telecom v. Japan Telecom Am., 287 F.3d 866, 873 (9th Cir. 2002)).

MGA argues that the Harrises failed to provide survey evidence at trial, which is "the most persuasive evidence of secondary meaning." (See Mot. at 28 (citing Levi Strauss & Co. v. Blue Bell, Inc., 778 F.2d 1352, 1358 (9th Cir. 1985)).) The Harrises respond that there was ample evidence of secondary meaning without an expert survey. (Opp'n at 19–20.)

The Court agrees with the Harrises that the trial record contains sufficient evidence to show secondary meaning. The Harrises provided consumer witnesses to testify about their recognition of the OMG Girlz' brand. (See generally Trial Tr. 9/10/24 AM 16–19 (video depositions of M. Campbell and W. Wagner).) The Harrises also provided evidence of consumer-made videos, press and media reports, and consumer interviews to show secondary meaning, along with a social media survey. (See Trial Tr. 9/12/24 PM 96:16–99:23.) While this social media survey is not an expert survey, it nonetheless received 17,000 responses out of 48,000 views. (Id. 100:24–101:3.)

Thus, the evidence at trial is sufficient to concluded that the OMG Girlz' trade dress acquired secondary meaning.

       3.     Abandonment

"Abandonment . . . requires an intent not to resume trademark use[.]" Electro Source, LLC v. Brandess-Kalt-Aetna Grp., Inc., 458 F.3d 931, 937 (9th Cir. 2006). MGA briefly argues that the OMG Girlz abandoned their trade dress in 2015 when the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-11548-JVS-AGR | Date | July 8, 2025 |

| | |
|---|---|
| Title | MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al. |

group disbanded.  (Mot. at 28.)  The Harrises admit that the OMG Girlz band "took a pause" in 2015 after the band broke up.  (Trial Tr. 9/6/24 117:23–118:20.)  Nevertheless, the plain evidence provided at trial demonstrates that there was no intent to abandon the trade dress.  (See Trial Tr. 9/6/24 AM 100:1–8; Trial Tr. 9/5/24 PM 81:1–82:12 (Ms. Womack testifying that the OMG Girlz maintained their social media presence, engaged with fans, and continued singing even after their break up in 2015).)  Accordingly, the evidence does not support a finding that the OMG Girlz abandoned their trade dress in 2015.

> 4.    Likelihood of Confusion

The likelihood of confusion is governed by the Sleekcraft[10] factors: "(1) strength of the protected mark; (2) proximity and relatedness of the goods; (3) type of goods and the degree of consumer care; (4) similarity of the protected mark and the allegedly infringing mark, (5) marketing channel convergence; (6) evidence of actual consumer confusion; (7) defendant's intent in selecting the allegedly infringing mark; and (8) likelihood of product expansion."  Pom Wonderful LLC v. Hubbard, 775 F.3d 1118, 1125 (9th Cir. 2014) (citation omitted).

> a.    **Strength of the Mark**

A stronger mark receives more protection under the Lanham Act.  Sleekcraft, 599 F.2d at 348.  A mark has both conceptual and commercial strength.  JL Beverage Co., LLC v. Jim Bean Brands Co., 828 F.3d 1098, 1106 (9th Cir. 2016).  A mark's conceptual strength "depends largely on the obviousness of its connection to the good or service to which it refers."  Id.  By contrast, a mark's commercial strength is determined by its recognition in marketplace.  Entrepreneur Media, Inc. v. Smith, 279 F.3d 1135, 1144 (9th Cir. 2002).  Courts classify "a mark along a spectrum of five categories ranging from strongest to weakest: arbitrary, fanciful, suggestive, descriptive, and generic."  JL Beverage, 828 F.3d at 1107 (citing Network Automation, Inc. v. Advanced Sys. Concepts, Inc., 638 F.3d 1137, 1149 (9th Cir. 2011)).

---

[10] AMF Inc. v. Sleekcraft Boats, 599 F.2d 341 (9th Cir. 1979).

**A27**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   2:20-cv-11548-JVS-AGR                    Date   July 8, 2025

Title   MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al.

MGA argues that the OMG Girlz have a weak trade dress because there is no singular, distinctive look.  As the Court explained, the OMG Girlz have a protectable trade dress based on a signature look.  (See Supra, Section C.1.)  The OMG Girlz trade dress is comprised of their name, combination of vibrant hair colors, and experimental, fun, urban, and edgy outfits.  Thus, this factor leans in favor of the Harrises.

### b.      Proximity or Relatedness of Goods

Where the goods bearing the two marks are related, there is a concern that the customers may be confused as to the producer of the goods.  Official Airline Guides, Inc. v. Goss, 6 F.3d 1385, 1392 (9th Cir. 1993).  Thus, where the goods are similar in use and function, less similarity between the marks may be required.  Sleekcraft, 599 F.2d at 350. The proximity of the goods is measure by whether the products are: (1) complementary; (2) sold to the same class of purchasers; and (3) similar in use and function.  Id.  A plaintiff "need not establish that the parties are direct competitors" in order to succeed on this factor.  Rearden LLC v. Rearden Com., Inc., 683 F.3d 1190, 1212 (9th Cir. 2012). The primary question is whether the goods or services would be "reasonably thought by the buying public to come from the same source if sold under the same mark." Sleekcraft, 599 F.2d at 348 n. 10.

In this case, the Court already determined that the Harrises and MGA are not direct competitors.  (See Preliminary Injunction Order at 11.)  However, this finding was specific to damages.  The Court was noting that because there was no direct competition, the Harrises had not missed any financial opportunities.  With respect to a finding of likelihood of confusion, a consumer could reasonably believe that the infringing L.O.L. Surprise! O.M.G. dolls came from the OMG Girlz or, at least a sponsored partnership. Thus, this factor leans in favor of the Harrises.

### c.      Similarity of the Marks

The similarity of the marks "has always been considered a critical question in the likelihood-of-confusion analysis."  GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1205 (9th Cir. 2000).  The following axioms must guide the comparison: "first, the marks must be considered in their entirety as they appear in the marketplace; second, similarity is adjudged in terms of appearance, sound, and meaning; and third, similarities are weighted more heavily than differences."  Id. at 1206 (citations omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   2:20-cv-11548-JVS-AGR                    Date   July 8, 2025

Title   MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al.

"Obviously, the greater the similarity between the two marks at issue, the greater the likelihood of confusion." Id.

MGA argues that the Dolls and the OMG Girlz are dissimilar such that this factor leans strongly against likelihood of confusion. The Court finds that the record strongly supports a similarity between the trade dress and the infringing dolls. The jury heard and saw evidence of the dolls with similar designs, hair color, and the "O.M.G." logo underneath. (Trial Tr. 9/13/24 AM 93:9–24; Trial Tr. 9/18/24 AM 76:14–25; Trial Tr. 9/19/24 AM 69:8–70:1.) Thus, the evidence shows that this factor leans in favor of finding likelihood of confusion.

### d.   Actual Confusion

Evidence of actual confusion is strong evidence that future confusion is likely. Thane Int'l Inc. v. Trek Bicycle Corp., 305 F.3d 894, 902 (9th Cir. 2002). However, a lack of such evidence is not dispositive. Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1178 (9th Cir. 1988).

At trial, the Harrises put forth substantial evidence of consumer confusion. This evidence included witness testimony from four consumers, (See e.g., Trial Tr. 9/10/24 AM 34:13–35:12; Trial Tr. 9/6/24 PM), testimony from the OMG Girlz about fan feedback, and a social media poll responded to by 17,000 people, (Trial Tr. 9/12/24 PM 100:24–101:3). Thus, the record supports a finding of actual confusion.

### e.   Marketing Channels and Types of Goods

"Where products bearing the marks are marketed through similar channels, there is a greater likelihood of confusion. Official Airline Guides, 6 F.3d at 1393. To assess coverage of marketing channels, "courts consider whether the parties' customer bases overlap and how the parties advertise and market their products." Pom Wonderful, 775 F.3d at 1130. Courts also examine whether the types of goods overlap from the perspective of a typical buyer exercising ordinary caution." Sleekcraft, 599 F.2d at 353.

Here, MGA and the OMG Girlz used the same marketing channels, such as YouTube and social media, to promote their products and services. (Compare Trial Tr. 9/18/24 AM 44:25–45:2 (MGA promoting on YouTube) with Trial Tr. 9/5/24 PM

A29

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    2:20-cv-11548-JVS-AGR                          Date    July 8, 2025

Title    MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al.

81:19–86:25 (Ms. Womack discussing social media and YouTube outreach).)  Thus, this factor leans in favor of a finding of likelihood of confusion.

### f.    Types of Goods and the Degree of Care Used

"In assessing the likelihood of confusion to the public, the standard used by the courts is the typical buyer exercising ordinary caution." Sleekcraft, 599 F.2d at 353 (citation omitted).  "When the buyer has expertise in the field, a higher standard is proper though it will not preclude a finding that confusion is likely. Similarly, when the goods are expensive, the buyer can be expected to exercise greater care in his purchases; again, though, confusion may still be likely." Id. (citations omitted).  "Consumer care for inexpensive products is expected to be quite low." Playboy Enters., 354 F.3d at 1028. Thus, "[l]ow consumer care . . . increases the likelihood of confusion." Network Automation, 638 F.3d at 1152 (citing Playboy Enters., 354 F.3d at 1028).

Neither party sufficiently describes the level of sophistication of the relevant purchasing population or the degree of care that would be exercised by such consumer. Thus, this factor remains neutral or weighs slightly against a finding of confusion.

### g.    Intent

The intent factor generally carries minimal weight because "an intent to confuse customers is not required for a finding of trademark infringement." Brookfield Commc'ns, 174 F.3d 1036, 1059 (9th Cir. 1999).  However, if the defendant knowingly adopts an infringing mark to deceive the public, courts presume that such confusion will occur.  Sleekcraft, 559 F.2d at 354.  Thus, this factor favors the plaintiff "where the alleged infringer adopted his mark with knowledge, actual or constructive, that it was another's trademark." JL Beverage, 828 F.3d at 1111 (quoting Brookfield, 174 F.3d at 1059).

As the Court has discussed at length, the evidence of intent is minimal and tenuous in this case.  (See Supra, Section A.2.)  Thus, this factor weighs against finding a likelihood of confusion.

### h.    Likelihood of Expansion

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-11548-JVS-AGR | Date | July 8, 2025 |
|---|---|---|---|

| Title | MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al. |
|---|---|

"Inasmuch as a trademark owner is afforded greater protection against competing goods, a 'strong possibility' that either party may expand his business to compete with the other will weigh in favor of finding that the present use is infringing." Sleekcraft, 559 F.2d at 354. "When goods are closely related, any expansion is likely to result in direct competition." Id. (citation omitted). "Where two companies are direct competitors, this factor is unimportant." Network Automation, 638 F.3d at 1153 (citing Brookfield, 174 F.3d at 1060).

The Harrises provided little if any evidence that they were intending to expand into the doll making business. (See Trial Tr. 9/4/24 AM 48–50.) Accordingly, this factor weighs against a finding of likelihood of confusion.

### i. Weighing the Factors

On balance, the Court finds that the Sleekcraft factors weigh strongly in favor of a finding of likelihood of confusion. The most critical factors, strength of mark, actual confusion, and similarity, all weigh in favor of the Harrises. Accordingly, the evidence presented at trial supports a finding that a reasonably prudent consumer is likely to be confused as to the origin of the infringing dolls.

### D. *Claims Against Mr. Larian*

MGA argues that judgment should be entered in favor of Mr. Larian on all claims brought against him individually because the Harrises failed to include him in the Final Pretrial Conference Order. (Mot. at 31.) As a rule, MGA is correct that parties may not offer evidence or advance theories at the trial which are not included in the [pretrial order]." U.S. v. First Nat. Bank of Circle, 652 F.2d 882, 886 (9th Cir. 1981).

However, the Pretrial Order plainly states that the "issues the Parties *agree* are to be tried are . . . Counter-Claimants' Third Amended Counterclaims[.]" (Final Pretrial Conference Order at 1 (alterations in original).) In the Third Amended Counterclaim ("TACC"), the Harrises asserted claims against Mr. Larian on the basis that he was "principally responsible as the driving force for making the decisions to distribute OMG Dolls that infringe on the OMG Girlz brand." (TACC, Dkt. No. 63 ¶ 22.) Moreover, the Court defined "MGA" in the Final Pretrial Conference Order to include MGA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    2:20-cv-11548-JVS-AGR                   Date    July 8, 2025

Title    MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al.

Entertainment, Inc. and Counter-Defendant Isaac Larian. (Id.) Thus, the Harrises claim was within the parameters of the Final Pretrial Conference Order.

MGA next argues that even if the claims were permissible, there was no evidence to support a claim against Mr. Larian individually. (Mot. at 31.) Once again, the Court disagrees. In the jury instructions, the Court was careful to explain to the jury that MGA Entertainment and Isaac Larian are collectively referred to as "MGA." (Jury Instructions, Dkt. No. 1013 at 2.) At all times when explaining trade dress infringement and misappropriation, the Court uses references to "MGA" or "MGA Parties." (Id. at 15–24.) Finally, the jury's verdict expressly finds that "MGA" infringed on the OMG Girlz' trade dress, (Jury Verdict at 5), and that "MGA" misappropriated the OMG Girlz' name, likeness, or identity, (id. at 6).

Accordingly, the Court denies judgment as a matter of law with respect to all claims against Mr. Larian individually.

### E.    *Declaratory Judgment*

MGA requests that the Court grant declaratory judgment in MGA's favor as to "the 15 Dolls for which the jury found infringement and/or misappropriation." (Mot. at 31.) In the alternative, MGA requests that, "at minimum, the Court should enter judgment for MGA on the eight Dolls that the jury found to infringe . . . and/or misappropriate . . ., but for which [the Harrises] *did not* seek liability and 'abandoned.'" (Id. (alterations in original).)

The Court declines to grant judgment as a matter of law on any of the above mentioned dolls. First, the Harrises counterclaims were supported by substantial evidence at trial. As discussed in this Order, there is no reason to overturn the jury's well-supported finding of infringement or misappropriation by granting declaratory judgment for MGA. Thus, with respect to MGA's argument for declaratory judgment on the 15 infringing dolls, the Court denies the request.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-11548-JVS-AGR | Date | July 8, 2025 |
| Title | MGA Entertainment Inc. et al. v. Clifford "T.I." Harris et al. | | |

Second, with respect to MGA's request for declaratory judgment on the eight dolls[11] found to be infringing or misappropriating, but which the Harrises did not seek liability, the Court declines to grant declaratory relief for MGA. The jury's verdict regarding these dolls was supported by the clear weight of evidence at trial and the mere fact that the Harrises did not seek liability does not provide sufficient reason to disturb this verdict.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** the motion. With respect to punitive damages, the Court **GRANTS** the motion, on the condition that the Harrises do not accept a remittitur of $1. The Harrises shall lodge a filing of their decision with the Court within 14 days upon the issuance of this Order. If the Harrises reject remittitur, the Parties shall meet and confer and file a joint proposed briefing schedule for the structure of a new trial.

Regarding the Lanham Act counterclaim and common law misappropriation counterclaim, the Court **DENIES** the motion. The Court **DENIES** both the request for declaratory judgment and for judgment as a matter of law for all claims against Mr. Larian individually.

**IT IS SO ORDERED.**

---

[11] Downtown B.B., Punk Grrrl, Virtuelle, Honeylicious, Miss Independent, City Babe, Shadow, and Miss Glam.

A33

JS-5

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-11548-JVS-AGR | Date | September 23, 2025 |
| Title | MGA Entertainment Inc. v. Clifford T.I. Harris et al | | |

Present: The Honorable **James V. Selna, U.S. District Court Judge**

| Elsa Vargas | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:    [IN CHAMBERS] Order Regarding Structure of New Trial [1138]**

On July 8, 2025 this Court granted the motion by Plaintiffs and Counterdefendants MGA Entertainment, Inc. and Isaac Larian (collectively, "MGA") for a new trial against Defendants and Counterclaimaints Clifford "T.I." Harris, Tameka "Tiny" Harris, and OMG Girlz LLC (collectively, "Harrises" or "OMG Girlz"). (Order, Dkt. No. 1133.) The Court requested briefing on the structure of a new trial. (Order, Dkt. No. 1138.)

Now before the Court are the parties' briefs addressing the structure and scope of a new trial. (MGA's Brief, Dkt. No. 1139; Harrises' Brief, Dkt. No. 1140.)

For the following reasons, the Court **ORDERS** a partial new jury trial on the amount of punitive damages.

## I. BACKGROUND

The parties are familiar with the facts of this litigation, so the Court recites them here only as necessary to resolve this Motion. The Court entered its Final Judgment on April 29, 2025. (Final Judgment, Dkt. No. 1118.) On May 27, 2025, MGA filed a motion requesting judgment as a matter of law or, in the alternative, new trial or remittitur. (Order, Dkt. No. 1121.)

On July 8, 2025, the Court ruled on MGA's motion. (Order, Dkt. No. 1133.) The Court found that the jury's verdict was contrary to the clear weight of the evidence that

A34

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   2:20-cv-11548-JVS-AGR                    Date   September 23, 2025

Title   MGA Entertainment Inc. v. Clifford T.I. Harris et al

MGA acted willfully.[1]  (Id. at 12–13.)  Therefore, the Court found that the jury's punitive damages award of $53,616,759 was excessive.  (Id. at 13.)  The Court granted a new trial on the issue of punitive damages on the condition that the Harrises did not accept a remittitur of $1, the maximum punitive damages award sustainable by the proof provided.  (Id. at 33.)  On July 10, 2025, the Harrises rejected the remittitur.  (Harrises' Denial of Remittitur, Dkt. No. 1136.)  Thus, the Court granted MGA's motion for a new trial and requested supplemental briefing on the structure of a new trial.  (Order, Dkt. No. 1138.)

## II.  LEGAL STANDARD

Under Rule 59(a), federal courts may grant a new trial "on all or some of the issues" when a new trial is warranted.  Fed. R. Civ. Proc. 59(a)(1).  Authority to grant a new trial "is confided almost entirely to the exercise of discretion on the part of the trial court."  Allied Chem. Corp. v. Daiflon, 449 U.S. 33, 36 (1980) (per curiam).  However, under the Seventh Amendment, "no fact tried by a jury shall be otherwise re-examined in any Court of the United States" unless a new trial is warranted.  See Floyd v. Laws, 929 F.2d 1390, 1397 (9th Cir. 1991).

Courts have the discretion to re-open liability if a new trial on damages alone would lead to injustice.  See Gasoline Prods. Co. v. Champlin Refining Co., 283 U.S. 494 (1931).  The well-established rule is that partial new trial on damages alone "may not properly be resorted to unless it clearly appears that the issue to be retried is so distinct and separable from others that a trial of it alone may be had without injustice."  Id. at 500.  However, the Ninth Circuit has affirmed that "[t]here may be some circumstances where the issues of liability and damages, exemplary or normal, are not so distinct and separable that a separate trial of the damage issues may be had without injustice."  United Airlines, Inc. v. Wiener, 286 F.2d 302, 306 (9th Cir. 1961).  Thus, it is for the district court to determine whether liability and damages are distinct and separable such that partial new trial may be warranted.

---

[1]The Court erred in stating its conclusion on the original motion that the evidence does not support a clear and convincing finding of willfulness, intent, or conscious disregard of the OMG Girlz' trade dress.  (Id. at 13).  Rather, under the Rule 59, the court may grant a new trial "if the *verdict* is contrary to the clear weight of the evidence."  United States v. 4.0 Acres of Land, 175 F.3d 1133, 1139 (9th Cir. 1999) (emphasis added).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   2:20-cv-11548-JVS-AGR                    Date   September 23, 2025

Title   MGA Entertainment Inc. v. Clifford T.I. Harris et al

### III. DISCUSSION

MGA argues that a bench trial is required to determine punitive damages, and if the issue is resolved at a jury trial, the issue of liability will need to be retried. (See MGA's Brief at 7–9, 11–12.) The Harrises respond that a jury trial is required but that the issue of liability need not be retried. (See Harrises' Brief at 1–3, 7–8.) The Court agrees with the Harrises.

*1. A Jury is Required to Decide the Issue of Punitive Damages*

The Seventh Amendment guarantees "the right of trial by jury" in "[s]uits at common law." U.S. Const. amend. VII. The right to a jury trial attaches when a case involves a legal claim, even if the case also seeks equitable relief. In re Tsay JBR LLC, 136 F.4th 1176, 1179 (9th Cir. 2025). Disgorgement is traditionally a form of equitable relief. See Liu v. SEC, 951 U.S. 71, 80 (2020). MGA argues that the availability of punitive damages based on an undserlying award of equitable disgorgement is an equitable issue, (see MGA's Brief at 7–9.), whereas the Harrises argue that such a request for punitive damages constitutes a legal claim for the jury, (see Harrises' Brief at 1–3.).

The jury already awarded the Harrises disgorgement: $17,872,253 reflecting the profits that MGA received from the use of the OMG Girlz' name, identity, or likeness. MGA argues that because a punitive damages remedy would be tethered to the disgorgement of profits, the punitive damages are also equitable. (See MGA's Brief at 7–8.) However, the Ninth Circuit has not so held in any published case. See Proofpoint, Inc. V. Vade USA, Inc., No. 23-16085, 2024 WL 4003096, at *1 (9th Cir. Aug. 30, 2024). In relying on Proofpoint, MGA glosses over Supreme Court jurisprudence by conflating the treatment of disgorgement with the treatment of punitive damages for the same underlying conduct. Compare Proofpoint, 2024 WL 4003096, at *1 (citing Liu v. SEC, 951 U.S. 71, 80 (2020) to justify treating exemplary damages "tethered" to disgorgement as within the court's equity jurisdiction) with Liu (finding that disgorgement is within the courts' equity jurisdiction, but not discussing exemplary damages). Disgorgement's status as a remedy in equity does not alone determine the categorization of related punitive damages.

A36

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   2:20-cv-11548-JVS-AGR                           Date   September 23, 2025

Title      MGA Entertainment Inc. v. Clifford T.I. Harris et al

A more recently published Ninth Circuit ruling clarifies how to determine whether an award for damages is legal or equitable. See In re Tsay JBR LLC, 136 F.4th 1176, 1180–81 (2025). An award is legal, not equitable, if it is "designed to punish or deter the wrongdoer" and not "solely to 'restore the status quo.'" Id. at 1180 (citing Sec. & Exch. Comm'n v. Jarkesy, 603 U.S. 109, 123 (2024)). Civil penalties, including punitive damages, are only enforced in courts of law. See Jarkesy, 603 U.S. at 123 (citing Tull v. United States, 481 U.S. 412, 422 (1987)). In this case, the Harrises seek punitive damages by way of California Civil Code § 3294, which enables exemplary damages where it is proven that the defendant acted by oppression, fraud, or malice in breaching an obligation not arising from contract. The statute explicitly states that the goal of the prescribed damages is to "punish[] the defendant," Cal. Civil Code § 3294(a). Section 3294 does not exist to "restore the status quo," Tsay, 136 F.4th at 1180. In fact, the disgorgement award has already done so. Thus, any award granted under § 3294 is a legal remedy, not an equitable one. Therefore, the Harrises are entitled to a jury trial on the issue of punitive damages as a matter of right.[2]

### 2. A New Trial on Liability is Not Required

Once a jury has determined liability and compensatory damages, a second jury may not reexamine those findings. United States v. Pend Oreille Public Utility District No. 1, 135 F.3d 602, 608 (9th Cir. 1998). In this case, the jury fairly determined that MGA committed trade dress infringement and misappropriation. (Verdict, Dkt. No. 1010 at 2–4.) The Court then determined that this finding was based on the substantial weight of evidence presented at trial and adopted the jury's disgorgement award of $17,872,253 for the misappropriation claim. (Final Judgment, Dkt. No. 1118 at 3.) These findings were not erroneous and thus, must stand. See Atlas Food Sys. and Servs., Inc. v. Crane Nat. Vendors, Inc., 99 F.3d 587, 599–600 (4th Cir. 1996) (rejecting defendant's argument for full retrial on all issues where district court concluded there was sufficient evidence to support the jury's reasonable findings on liability and compensatory damages).

---

[2]In their respective briefs, the parties debate whether MGA's Rule 39(c) consent to a jury trial carries over to a new trial on punitive damages. (See MGA's Brief at 9; Harrises' Brief at 6.) But 39(c) consent is only relevant if a jury trial is not required–namely, because the requested relief is equitable. Because this Court holds that the requested punitive damages are a legal remedy, a jury trial is required, and thus the consent issue need not be addressed.

A37

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   2:20-cv-11548-JVS-AGR                    Date   September 23, 2025

Title      MGA Entertainment Inc. v. Clifford T.I. Harris et al

Indeed, this Court granted MGA's motion for a new trial on the sole basis that the jury's verdict was contrary to the clear weight of the evidence that MGA acted with wilfulness, intent, or conscious disregard of the OMG Girlz' trade dress to support punitive damages. (Order, Dkt. No. 1121 at 13.) The Harrises' failure to produce sufficient evidence of willfulness, intent, or conscious disregard goes only to the issue of punitive damages and does not affect the validity of the jury's finding that MGA committed trade dress infringement and misappropriation. Thus, while the issue of punitive damages must stand new trial, the jury's findings of disgorgement must stand.

The Court further finds that the issue of the amount of punitive damages is separable and distinct enough from the issue of liability, such that a partial new trial would not constitute injustice. The Ninth Circuit has routinely upheld retrials that are limited to the punitive damages amounts. See, e.g., White v. Ford Motor Co., 500 F.3d 963 (9th Cir. 2007); Costa v. Desert Palace, Inc., 299 F.3d 838, 864–65 (9th Cir. 2002). The ultimate question is whether the facts of any particular case warrant such a limited retrial. See United Airlines, 286 F.2d at 306 (stating in dicta that sometimes liability and damages may not be so interwoven as to cause injustice in a new trial for damages). In California, punitive damages are available "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Waits v. Frito-Lay, Inc., 978 F.2d 1093, 1104 (9th Cir. 1992) (citing Cal. Civ. Code § 3294(a)). Under the definitions of "oppression," "fraud," and "malice" as defined in § 3294(a), the Harrises must show MGA had intent, conscious disregard, or willfulness to obtain punitive damages. (See Order, Dkt. No. 1121 at 7.)

MGA argues that retrying the issue of willfulness to a new jury would require a full retrial of liability. (MGA's Brief at 11–12.) They argue that the jury would need to hear all of the evidence regarding misappropriation to determine if MGA acted willfully. (Id.) But for the Harrises to prove misappropriation at the previous trial, they did not have to show wilfulness. See Newcombe v. Adolf Coors Co., 157 F.3d 686, 692 (9th Cir. 1998) (defining the elements of common law misappropriation: (1) the defendant's use of the plaintiff's name, likeness, or identity; (2) the misappropriation of plaintiff's name or likeness to the defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury). Furthermore, as the Harrises correctly argue, "wilfulness" under the Lanham Act is distinct from the standard required for punitive damages under state law. (Harrises' Brief at 8.) Therefore, the arguments made at a new

A38

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   2:20-cv-11548-JVS-AGR                              Date   September 23, 2025

Title   MGA Entertainment Inc. v. Clifford T.I. Harris et al

trial for punitive damages will be distinct from those made for liability at the previous trial.

Albeit, in this new trial, some evidence may overlap with the trial on liability. But the jury will be required to view that evidence in light of the distinct standard of wilfulness for punitive damages. Furthermore, the Harrises suggest they will–and indeed they should–supplement the record with additional evidence proving wilfulness that was not viewed at the September 2024 trial. (Harrises' Brief at 8–12.)

Therefore, the issues of liability and punitive damages are distinct and separable. A new trial is only warranted on the issue of punitive damages.

*3. Structure of the Partial New Trial*

The Court has thus concluded that the determination of liability, as well as the award of disgorgement, has fairly been resolved. The new jury should be bound by these findings. The Parties are hereby ordered to draft jury instructions consistent with, but not limited to, the following findings*:*

1. Liability for MGA's infringement on the OMG Girlz trade dress with respect to seven dolls, as well as MGA's misappropriation of OMG Girlz' name, likeness, or identity, have already been determined. (See Final Judgment, Dkt. No. 1118.) The Parties should specify the elements of this claim and state that the jury necessarily found to return a verdict on the claim. The Court's jury previous instructions should be the basis for the new instruction. (See Dkt. No. 1013, Instruction Nos. 21–22.)
2. The amount of damages for disgorgement of profits has already been determined. OMG Girlz was given a $17,872,253 disgorgement award. (Dkt. No. 1090.)
3. The only remaining questions are whether MGA acted with oppression, fraud, or malice, and if so, the amount of punitive damages.

The Parties shall meet and confer regarding dates for a case management conference, new trial, and Rule 16(e) Final Pretrial Conference. Any objections to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    2:20-cv-11548-JVS-AGR                    Date    September 23, 2025

Title    MGA Entertainment Inc. v. Clifford T.I. Harris et al

evidence submitted for this new trial should be filed as motions in limine to be discussed at the conference.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-11548-JVS-AGR | Date | November 20, 2025 |
| Title | MGA Entertainment Inc. v. Clifford T.I. Harris et al | | |

Present: The Honorable **James V. Selna, U.S. District Court Judge**

| Elsa Vargas | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

Proceedings:   **[IN CHAMBERS] Order Regarding Motion for Certification of Interlocutory Appeal [1150]**

Plaintiff and Counter-Defendant MGA Entertainment Inc. and Counter-Defendant Isaac Larian (together, "MGA") move to certify for appeal the Court's September 23, 2025, order regarding a new trial on punitive damages (Order ("New Trial Order"), Dkt. No. 1144), and the Court's July 8, 2025, order regarding available remedies (Order ("Available Remedies Order"), Dkt. No. 1133). (Mot., Dkt. No. 1150.) Defendants and Counterclaimants Clifford "T.I." Harris, Tameka "Tiny" Harris, and OMG Girlz LLC (collectively, "Harrises" or "OMG Girlz") opposed. (Opp'n Dkt. No. 1157.) MGA replied. (Reply, Dkt. No. 1161.)

For the following reasons, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** the motion.

## I. BACKGROUND

The parties are familiar with the factual and procedural background of this case, so the Court recites it here only as necessary to resolve the motion.

Following the Court entering Final Judgment on April 29, 2025, (Final Judgment, Dkt. No. 1118), MGA filed a motion requesting judgment as a matter of law or, in the alternative, new trial or remittitur. (Order, Dkt. No. 1121.) On July 8, 2025, the Court ruled on MGA's motion, finding that the jury's verdict finding that MGA acted willfully

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    2:20-cv-11548-JVS-AGR                    Date    November 20, 2025

Title    MGA Entertainment Inc. v. Clifford T.I. Harris et al

was contrary to the clear weight of the evidence.[1]  (Order, Dkt. No. 1133 at 12–13.)  Therefore, the Court found that the jury's punitive damages award of $53,616,759 was excessive.  (Id. at 13.)  The Court granted a new trial on the issue of punitive damages on the condition that the Harrises did not accept a remittitur of $1, the maximum punitive damages award sustainable by the proof provided.  (Id. at 33.)  On July 10, 2025, the Harrises rejected the remittitur.  (Harrises' Denial of Remittitur, Dkt. No. 1136.)  Thus, the Court granted MGA's motion for a new trial and requested supplemental briefing on the structure of a new trial.  (Order, Dkt. No. 1138.)

On September 23, 2025, the Court ordered a partial new jury trial on the amount of punitive damages, finding that the OMG Girlz are entitled to a jury trial on the issue of punitive damages as a matter of right.  (Order, Dkt. No. 1144.)

## II. LEGAL STANDARD

Under 28 U.S.C. § 1292(b), the party seeking certification must establish that: (1) there is a controlling question of law, (2) as to which there are substantial grounds for difference of opinion, and (3) an immediate appeal from the order may materially advance the ultimate termination of litigation.  In re Cement Antitrust Litig., 673 F.2d 1020, 1026 (9th Cir. 1982).  Only if all three factors are met may the Court certify an order for appeal.  Id.; see also Couch v. Telescope Inc., 611 F.3d 629, 633 (9th Cir. 2010) ("Certification under § 1292(b) requires the district court to expressly find in writing that all three § 1292(b) requirements are met.").  "Section 1292(b) is a departure from the normal rule that only final judgments are appealable, and therefore must be construed narrowly."  James v. Price Stern Sloan, 283 F.3d 1064, 1067 n.6 (9th Cir. 2002).  Such a departure is "to be applied sparingly and only in exceptional cases."  United States v. Woodbury, 263 F.2d 784, 788 n.11 (9th Cir. 1959).  Thus, the party seeking certification "has the burden of showing that exceptional circumstances justify a departure from the 'basic policy of postponing appellate review until after the entry of a final judgment.'"  Fukuda v. Cnty. of L.A., 630 F. Supp. 228, 229 (C.D. Cal. 1986)

---

[1]The Court erred in stating its conclusion on the original motion that the evidence does not support a clear and convincing finding of willfulness, intent, or conscious disregard of the OMG Girlz' trade dress.  (Id. at 13).  Rather, under the Rule 59, the court may grant a new trial "if the *verdict* is contrary to the clear weight of the evidence."  United States v. 4.0 Acres of Land, 175 F.3d 1133, 1139 (9th Cir. 1999) (emphasis added).

A42

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    2:20-cv-11548-JVS-AGR                    Date    November 20, 2025

Title    MGA Entertainment Inc. v. Clifford T.I. Harris et al

(quoting Coopers & Lybrand v. Livesay, 437 U.S. 463, 475 (1978)).

### III. DISCUSSION

MGA seeks to appeal two of the Court's orders: (1) the September 23, 2025, New Trial Order, and (2) the July 8, 2025, Available Remedies Order. (Mot. at 1.) The Court evaluates the appeal of each order in turn.

### A.    Interlocutory Appeal of the New Trial Order

In determining the nature of a new trial for punitive damages, the parties disputed whether a jury or bench trial was required. (See MGA's Brief on Structure of a New Trial ("MGA's New Trial Brief"), Dkt. No. 1139; Harrises' Brief on Structure of a New Trial ("Harrises' New Trial Brief"), Dkt. No. 1140) MGA argued that because the only other remedy awarded was disgorgement, itself an equitable remedy, punitive damages are also equitable and should be decided by the Court. (MGA's New Trial Brief, Dkt. No. 1139, at 7–1; Mot. at 3.) However, in its New Trial Order, the Court found that the availability and amount of punitive damages must be decided by a jury as a matter of right. (New Trial Order at 3–4.) MGA seeks interlocutory appeal on this issue. (See Mot., generally.)

### 1.    Controlling Question of Law

MGA argues there exists a controlling question of law: "must punitive damages in a disgorgement action be tried by a jury and not a court?" (Mot. at 4.) The Court agrees with MGA this question is one of pure law, rooted in whether the Seventh Amendment entitles a party to a jury trial. (Mot. at 5.) The OMG Girlz do not seem to dispute this characterization. (See Opp'n at 2–3; Reply at 2.)

The parties dispute whether this question is controlling. A controlling question is one in which its resolution on appeal could "materially affect the outcome of litigation in the district court." ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union, 22 F.4th

CV-90 (06/04)                    **CIVIL MINUTES - GENERAL**                    Page 3 of 11

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   2:20-cv-11548-JVS-AGR                    Date   November 20, 2025

Title   MGA Entertainment Inc. v. Clifford T.I. Harris et al

1125, 1130 (9th Cir. 2022); see also In re Cement Antitrust Litig., 673 F.2d 1020, 1026 (9th Cir. 1981).

To argue that the question is controlling, MGA describes that the Ninth Circuit has twice accepted interlocutory appeals on the question of whether certain claims must be tried to a jury or the bench. (Mot. at 5 (citing Standard Oil Co. of Cal. v. Arizona, 738 F.2d 1021, 1022–23 (9th Cir. 1984); SEC v. Rind, 991 F.2d 1486, 1488 (9th Cir. 1993).) MGA also points out that other courts have found the question of whether a jury or a bench trial is required to be "controlling." (Id. (citing Hoescht Marion Roussel, Inc. v. Par Pharm, Inc., 95 F.3d 1165, 1165 (Fed. Cir. 1996); In re Baker & Getty Fin. Servs., Inc., 954 F.2d 1169, 1172 (6th Cir. 1992).) The OMG Girlz argue that this question is not controlling because regardless of an interlocutory appeal, the Court will still hold a fourth trial on punitive damages, and thus the appeal will not affect the outcome of litigation in the district court. (Opp'n at 2–3.)

The Court finds the OMG Girlz argument unavailing. The issue is not whether a trial is held at all, but whether it is a bench or a jury trial. As the Ninth Circuit and other courts have found, the nature of the trial will "materially affect the outcome of litigation in the district court." ICTSI Oregon, 22 F.4th at 1130; see Standard Oil Co. of Cal., 738 F.2d at 1022–23; Rind, 991 F.2d at 1488. Thus, the question of whether punitive damages in a disgorgement action be tried by a jury and not the court is a controlling question of law.

### 2.   Substantial Grounds for Difference of Opinion

A substantial ground for difference of opinion exists if the "appeal involves an issue over which reasonable judges might differ." Reese v. BP Expl. (Alaska) Inc., 643 F.3d 681, 688 (9th Cir. 2011).

MGA argues that the disputed issue, whether punitive damages in a disgorgement action are legal or equitable, and thus must be tried by a jury, meets this threshold. To demonstrate that it is an issue over which reasonable judges may differ, MGA points to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   2:20-cv-11548-JVS-AGR                     Date   November 20, 2025

Title   MGA Entertainment Inc. v. Clifford T.I. Harris et al

this Court's own rulings.  In its January 3, 2025, tentative on post-trial equitable issues, the Court looked to the unpublished Ninth Circuit opinion in Proofpoint, Inc. v. Vade USA, Inc., finding that "[p]unitive damages are a mainstay of equity when 'a remedy is tethered to a wrongdoer's net unlawful profits.'" (Mot. for Reconsideration, Dkt. No. 1096-4, Ex. B, at 21 (citing 2024 WL 4003096, at *1 (9th Cir. Aug. 30, 2024)).) Following the Court's tentative, the Ninth Circuit published the In re Tsay JBR LLC opinion, clarifying a framework for determining whether an award is legal or equitable. 136 F.4th 1176, 1180 (9th Cir. 2025); (see Opp'n at 3.).  In its September 23, 2025, New Trial Order, this Court analyzed punitive damages under the In re Tsay framework, finding that the punitive damages award is legal because it is "designed to punish or deter the wrongdoer" and not "solely to restore the status quo."  (New Trial Order at 3–4 (citing 136 F.4th 1176, 1180 (9th Cir. 2025)).)

The OMG Girlz argue that there is no grounds for difference of opinion.  (See Opp'n at 3.)  They claim that In re Tsay, a published Ninth Circuit opinion, overwrote Proofpoint, an earlier unpublished Ninth Circuit opinion, and established the framework for determining whether a remedy is legal or equitable.  (Id.)  The OMG Girlz also argue that there are "no circuit splits or inconsistent district holdings," suggesting no substantial ground for difference of opinion.  (Id. at 4.)

This Court finds that reasonable judges may differ over whether In re Tsay overwrote Proofpoint.  Proofpoint specifically addressed remedies tethered to disgorgement, while In re Tsay did not, but it established a general framework for analyzing remedies as legal or equitable.  Compare Proofpoint, 2024 WL 4003096, at *1 with In re Tsay, 136 F.4th at 1180–81.  Furthermore, In re Tsay draws on the same cases referenced by Proofpoint, including SEC v. Jarksey, 603 U.S. 109 (2024), but does not address Proofpoint.  Id.  Therefore, after Proofpoint and In re Tsay, it is not obvious whether courts should apply the general In re Tsay framework or the specific Proofpoint analysis for punitive damages in a disgorgement action.  Thus, reasonable judges may differ over whether a trial over punitive damages should be tried by a jury or the bench in this case.  And despite the OMG Girlz' claim, no law suggests that a circuit split is

A45

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   2:20-cv-11548-JVS-AGR                    Date   November 20, 2025

Title   MGA Entertainment Inc. v. Clifford T.I. Harris et al

required to justify this uncertainty as a substantial ground for difference in opinion. Therefore, the Court finds that substantial grounds for difference in opinion exist here.

### 3.   Advance Ultimate Termination of Litigation

An interlocutory appeal advances the ultimate termination of litigation "when resolution of the question 'may appreciably shorten the time, effort, or expense' of the district court proceedings." ICTSI Oregon, 22 F.4th at 1131.

MGA argues that if this Court declines to certify interlocutory appeal, it may appeal after final judgment in the jury trial, potentially resulting in a fifth bench trial. (Mot. at 8.)  The OMG Girlz respond that, if so, the Court could simply review the punitive damages trial record and treat the jury's record as advisory in making its own finding.  (Opp'n at 6.)

The Court finds that even if it may treat the fourth trial's record as advisory in a fifth bench trial, this cannot justify the time, effort, and expense of a jury trial if it is not necessary.  To avoid extending an already protracted litigation history, the Court finds that interlocutory appeal on this issue would advance the ultimate termination of litigation.

Finding that all three statutory requirements are met, the Court **GRANTS** certification of the New Trial Order for interlocutory appeal.

### B.   Interlocutory Appeal of the Available Remedies Order

In post-trial briefings, the parties disputed the availability of punitive damages given the absence of actual damages.  (See Mot. at 3; Dkt. 1046 at 24–25;  Dkt. 1121-1 at 11–12; Dkt. 1125 at 12–14.)  In its Available Remedies Order, the Court ruled that punitive damages were available, but vacated the punitive damages award, finding that the jury's verdict was contrary to the clear weight of the evidence that MGA acted willfully.  (Available Remedies Order at 12–13.)  MGA seeks interlocutory appeal on the

A46

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   2:20-cv-11548-JVS-AGR                    Date   November 20, 2025

Title   MGA Entertainment Inc. v. Clifford T.I. Harris et al

issue of whether punitive damages are available in the absence of actual damages. (Mot. at 9.)

### 1.   Procedural Arguments

The OMG Girlz object to the certification of interlocutory appeal of the Available Remedies Order on several procedural grounds. First, the OMG Girlz suggest that MGA waived its ability to challenge punitive damages because it failed to raise the argument under Rule 50(a) before trial. (Opp'n at 6.) But as MGA points out, this Court has already rejected that argument. (Order, Dkt. No. 1133, at 6.) Because MGA requested punitive damages relief under Rule 59, their argument was not waived. (Id.)

Second, the OMG Girlz also suggest that MGA's request for review on this issue is untimely because the Court ruled on the availability of damages months ago. (Opp'n at 6.) There is no specified time limit for seeking certification, unless the request is "inexcusably dilatory." Spears v. Washington Mut. Bank FA, 2010 WL 54755, at *1 (N.D. Cal. Jan. 8, 2010). The OMG Girlz have made no argument that the three months between the Available Remedies Order and the motion for certification is "inexcusably dilatory." Id. Thus, the Court does not entertain this argument.

Lastly, the OMG Girlz argue that the Available Remedies Order is inapt for certification because the question at issue, whether punitive damages are available without actual damages, is one of state law. (Opp'n at 7.) Federal courts are competent to apply state law, and only in exceptional circumstances is certification before a state supreme court advisable. See McKesson v. Doe, 592 U.S. 1, 5 (2020). Even if the Ninth Circuit was to certify the question to the California Supreme Court, causing some delay, this does not impact whether this Court should grant interlocutory appeal. The OMG Girlz fail to present any law that suggests the likelihood of state court certification impacts a court's ability to grant interlocutory appeal to an issue that is "material" to the order. See In re Cinematronics, 916 F.2d at 1449.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   2:20-cv-11548-JVS-AGR                    Date   November 20, 2025

Title   MGA Entertainment Inc. v. Clifford T.I. Harris et al

Finding none of the OMG Girlz' procedural arguments availing, the Court continues to the 1292(b) statutory factors to determine if certification is appropriate.

2.      Controlling Question of Law

MGA argues there exists a controlling question of law: "are punitive damages available at all without actual damages?"  (Mot. at 4.)  The OMG Girlz do not challenge whether this is a controlling question of law in their Opposition, seeming to concede the factor.  (See Opp'n at 7.)  The Court agrees with MGA that this question is purely legal and its resolution could eliminate the need for a fourth trial.  Thus, the first factor is satisfied.

3.      Substantial Ground for Difference of Opinion

MGA argues that California law is clear that punitive damages are unavailable without actual damages.  (Mot. at 10 (citing California v. Atlus Finance S.A. , 540 F.3d 992, 1000 (9th Cir. 2008); accord Mother Cobb's Chicken Turnovers, Inc. v. Fox , 10 Cal. 2d 203, 205 (1937) ("Actual damages must be found as a predicate for exemplary damages.").)[2]

The OMG Girlz disagree, arguing that punitive damages are available if "a tortious act be proven."  (Opp'n at 7 (citing Topanga Corp. v. Gentile, 249 Cal. App. 2d 681, 691 (Ct. App. 1967).)  But the California Supreme Court has repeatedly held that proof of liability is not enough to render punitive damages available.  See Mother Cobb's Chicken

---

[2]The Court finds that MGA oversimplifies the Ninth Circuit's opinion in Altus Fin on this issue. (Reply at 10 (citing Altus Fin., 540 F.3d at 996, 1001).)  In Altus Fin., the Ninth Circuit stated that restitution is not a permissible predicate for punitive damages where the "defendant is not legally liable for fraud and a jury has expressly awarded '$0' in compensatory damages."  Altus Fin., 540 F.3d at 1003.  Here, the jury found MGA liable.  (Final Judgment at 1.)  And the jury never analyzed compensatory damages, as the OMG Girlz opted for the jury to only consider disgorgement. (Mot. in Limine No. 4, Dkt. No. 502, at 7–8; MGA's Proposed Findings of Fact and Conclusions of Law, Dkt. No. 1071, at 24–25.)  Thus, nothing in Altus Fin. precludes a finding of punitive damages in this case.

A48

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-11548-JVS-AGR | Date | November 20, 2025 |
| Title | MGA Entertainment Inc. v. Clifford T.I. Harris et al | | |

Turnovers, 10 Cal. 2d 203 at 206 (1937) (finding punitive damages unavailable because, although the jury found the defendant liable, the plaintiff suffered no damages, and thus was awarded no compensatory damages); see also Kizer v. County of San Mateo 53 Cal.3d 139, 147 (1991) ("In California, as at common law, actual damages are an absolute predicate for an award of exemplary or punitive damages."); Cheung v. Daley, 35 Cal. App. 4th 1673, 1676 (1995) (summarizing decades of case law and concluding "our highest court requires that any award of exemplary damages be accompanied by an express award of compensatory damages.").

Neither party is correct. California case law states that punitive damages are available when either actual damages or the "equivalent" of actual damages, such as restitution, is awarded. See Cheung, 35 Cal. App. 4th at 1677 n.8. Indeed, as this Court described in its Available Remedies Order, California courts have found that punitive damages are not precluded when the plaintiff's recovery is in the form of specific restitution, instead of monetary damages. (See Available Remedies Order at 14); Millar v. James, 254 Cal. App. 2d 530, 533 (1967); see also Horn v. Guaranty Chevrolet Motors, 270 Cal. App. 2d 477, 484 (1969) ("[I]t is immaterial that plaintiff's recovery is in the form of specific restitution, rather than monetary damages."). This Court found that the jury awarded damages to reflect "the profits that MGA received from the use of the OMG Girlz' name, identity, or likeness," a form of restitution. (Available Remedies Order at 14.)

Yet MGA argues that the disgorgement award here is not equivalent to actual damages, and thus punitive damages are not available. (See Opp'n at 16.) It claims that because the disgorgement award was based on MGA's profits, not on the OMG Girlz' losses, there was no "financial harm." (Id.) But this Court noted that damages for common law misappropriation may extend beyond mere economic losses, and it found that disgorgement of profits was a proper remedy as a form of "additional resulting damages." (See Order on Post-Trial Equitable Issues, Dkt. No. 1090, at 13–14.) Thus, the Court finds that disgorgement was awarded as an "equivalent to actual damages." Cheung, 35 Cal. App. 4th at 1677 n.8.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    2:20-cv-11548-JVS-AGR                                   Date    November 20, 2025

Title    MGA Entertainment Inc. v. Clifford T.I. Harris et al

Furthermore, punitive damages are appropriate in the absence of actual damages when the award of "restitution would have little or no deterrent effect." Ward v. Taggart, 51 Cal. 2d 736, 743 (1959). In Ward, the California Supreme Court awarded punitive damages predicated on restitution against a plaintiff who made an unlawful profit at the expense of the defendants. Id. The court found that in the absence of punitive damages, the plaintiff "would run no risk of liability to their victims beyond that of returning what they wrongfully obtained." Id. Similarly, disgorgement alone is not a deterrent to MGA; disgorgement simply requires MGA to return what was wrongfully obtained. Thus, punitive damages are necessary for deterrence and are appropriate in this case.

Thus, in this case, the Court finds that whether punitive damages are available in the absence of actual damages is not "an issue over which reasonable judges might differ." Reese, 643 F.3d at 688. Thus, the second 1292(b) factor fails, and the Court **DENIES** MGA's motion to certify for interlocutory appeal of the Available Remedies Order.[3]

**IV. CONCLUSION**

For the foregoing reasons, this Court **GRANTS** interlocutory appeal of the New Trial Order and **DENIES** interlocutory appeal of the Available Remedies Order. The Court also hereby **STAYS** proceedings pending resolution of the appeal to the Ninth

---

[3] Although the statutory factors fail for certification of the Available Remedies Order, MGA argues that the Ninth Circuit may still consider the order because of the certification of the New Trial Order. (See Mot. at 9.) MGA points to the Ninth Circuit's holding that it may "address issues outside the four corners of the properly certified order" when the issue "provides grounds for reversal of the entire order." (Mot. at 9); In re Cinematronics, Inc., 916 F.2d 1444, 1449 (9th Cir. 1990). The Court agrees with MGA that the Ninth Circuit may analyze the New Trial Order on the basis that it is "inextricably tied" to the Available Remedies Order. Id.; (see Mot. at 9.) Whether punitive damages are available is a prerequisite question as to whether punitive damages must be determined by a jury. Thus, the Ninth Circuit can likely assess the Available Remedies Order on interlocutory appeal, even without independent statutory certification from this Court.

A50

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   2:20-cv-11548-JVS-AGR                     Date   November 20, 2025

Title   MGA Entertainment Inc. v. Clifford T.I. Harris et al

Circuit. The parties shall file a status brief within ten (10) days of the resolution of appeal, or sooner if events warrant.

**IT IS SO ORDERED.**